KERANS ET AL., APPELLANTS, *v.* PORTER PAINT COMPANY, APPELLEE.

[Cite as *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486.]

(No. 90–1036—Submitted March 12, 1991—Decided August 21, 1991.)

*James D. Dennis,* for appellants.

*R. Gary Winters* and *John J. Finnigan, Jr.,* for appellee.

*Helmer, Lugbill & Whitman Co., L.P.A., James B. Helmer, Jr., Ann Lugbill* and *Kathryn A. Doelling,* urging reversal for *amicus curiae,* National Employment Lawyers Association.

*Spater, Gittes, Schulte & Kolman, Frederick M. Gittes, Kathaleen B. Schulte, Louis A. Jacobs* and *John S. Marshall,* urging reversal for *amici curiae,* 9 to 5, National Association of Working Women, Ohio National Organization for Women, Committee Against Sexual Harassment, and the National Lawyers Guild.

ALICE ROBIE RESNICK, J. We must first address appellee's contention that the appellants' claims are barred by R.C. 4123.74. R.C. 4123.74 provided, in pertinent part, "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment * * *." 128 Ohio Laws 1334. Appellee claims that under this statute, the appellants may not bring any cause of action against it except those authorized by this court in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, and its progeny, which shall be discussed *infra.* See, also, *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108.

There are several difficulties with appellee's argument. First, it assumes that appellant's injury is an injury within the meaning of R.C. 4123.74, that is, within the definition of "injury" in R.C. 4123.01. We are not prepared to so

hold at this time.[2] The injury alleged by the appellant in this case is a non-physical injury with purely psychological consequences. In *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379, we held that a physical injury occasioned solely by mental or emotional stress received in the course of employment is an "injury" within the definition found in R.C. 4123.01(C). In that case, the plaintiff suffered a heart attack and died after being pressured into an early retirement by company officials. While the harm suffered by appellant in the case at bar was also occasioned by emotional stress, the alleged consequence, the development of post-traumatic stress disorder, is purely psychological.

Since this court's ruling in *Ryan, supra,* the legislature has not amended the definition of "injury" in R.C. 4123.01(C) to include psychiatric ailments resulting solely from stressful workplace conditions. In fact, R.C. 4123.01(C) now specifically states that "injury does not include * * * psychiatric conditions except where the conditions have arisen from an injury or occupational disease." In light of this limitation, we are not prepared to assume that psychological disturbances arising solely from emotional stress in the workplace fit within the definition of "injury" in R.C. 4123.01.

If the workers' compensation scheme were adjudged to be the exclusive remedy for claims based upon sexual harassment in the workplace, as appellee urges, victims of sexual harassment would often be left without a remedy. Generally, injured employees receive coverage only for economic losses resulting from their accidents—medical bills, lost wages, and diminished earning capacity. However, aside from expenses which they may incur for psychiatric care, victims of sexual harassment generally do not suffer economic loss. Their injuries are much less tangible and often are not susceptible to a neat compensatory formula. Thus, even if this court were to hold that psychiatric conditions resulting solely from emotional stress in the workplace are compensable under the workers' compensation scheme, most victims would not obtain appropriate or sufficient relief.

The mismatch between the workers' compensation laws and claims arising out of sexual harassment in the workplace was recently recognized by the Florida Supreme Court in *Byrd v. Richardson–Greenshields Securities, Inc.* (Fla.1989), 552 So.2d 1099. In that case, the court specifically held that Florida's workers' compensation statute does not provide the exclusive reme-

---

2. The common pleas court's decision denying appellant's application for workers' compensation benefits is not before the court at this time. However, in order for this court to find that the workers' compensation statute provides the exclusive remedy for appellant's injury, we must find that it is theoretically possible for her to recover under the statute, *i.e.,* that she has suffered the type of injury which is compensable under the statute.

dy for claims based on sexual harassment in the workplace. In justifying its holding, the court stated: " * * * workers' compensation is directed essentially at compensating a worker for lost resources and earnings. This is a vastly different concern than is addressed by the sexual harassment laws. While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self esteem. Workers' compensation addresses purely economic injury; sexual harassment laws are concerned with a much more intangible injury to personal rights. * * * " *Id.* at 1104.

The scope and purpose of Ohio's workers' compensation scheme do not differ from Florida's in any aspect which is relevant to the question before us. As in Florida, it would contravene the legislative intent behind the workers' compensation laws for this court to hold that those laws provide the exclusive remedy for victims of workplace sexual harassment. Consequently, we reject appellee's argument that the appellants' claims are barred by R.C. 4123.74.

Appellee argues that even if appellants' claims are not barred by R.C. 4123.74, appellee cannot be held liable for its employee's intentional acts since the activities which form the basis of the complaint took place outside the scope of the perpetrator's employment. Appellee contends that because it did not hire Levine to sexually harass female employees, and because Levine's actions in no way facilitated appellee's business, it may not be held liable for the harm which resulted from his egregious behavior. In support of this contention, appellee invokes this court's decision in *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584, citing *Taylor v. Doctors Hosp.* (1985), 21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249.

Our response to this argument is twofold. First, we find that there is a genuine issue of material fact as to whether Levine's actions took place within the scope of his employment with the Porter Paint Company. In determining whether to impose liability based on *respondeat superior* on an employer for the sexually harassing acts of one of its employees, federal courts have employed traditional agency principles. Specifically, they have held that where an employee is able to sexually harass another employee because of the authority or apparent authority vested in him by the employer, it may be said that the harasser's actions took place within the scope of his employment. *Meritor Sav. Bank, FSB v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49; *Yates v. Avco Corp.* (C.A.6, 1987), 819 F.2d 630; *Shrout v. Black Clawson Co.* (S.D. Ohio 1988), 689 F.Supp. 774. Thus, in *Shrout, supra,* the court held that "[b]ecause the harassment took place during working hours, at the office, and was carried out by someone with the authority to hire, fire, promote and discipline the plaintiff, * * * [the harassing employee's] conduct took place in the scope of his employment." *Id.* at 781.

In the case at bar, there is a genuine issue of material fact regarding the extent of Levine's authority. While appellee contends that Levine was not Kerans's supervisor, there is evidence in the record which suggests that he did hold that position vis-a-vis both Kerans and some of those who preceded her as decorator at the Kenwood store. Moreover, there is evidence in the record which suggests that Levine had the authority to control Kerans's work hours and time of departure from the Kenwood store. If he did have this authority, and if he used this authority to cause Kerans to feel that she had to endure his advances in order to keep her job, then a jury could reasonably find that he acted within the scope of his employment. Consequently, at this point it cannot be concluded that there is no *respondeat superior* liability on the part of the appellee. Both the trial court and the court of appeals erred in granting summary judgment on this ground.

Moreover, even if Levine's activities took place outside the scope of his employment, summary judgment against appellants' claims would not be proper. 2 Restatement of the Law 2d, Torts (1965) 125, Section 317, provides as follows:

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

"(a) the servant

"(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

"(ii) is using a chattel of the master, and

"(b) the master

"(i) knows or has reason to know that he has the ability to control his servant, and

"(ii) knows or should know of the necessity and opportunity for exercising such control."

On the basis of this principle, both state and federal courts have held that an employer may be liable for failing to take appropriate action where that employer knows or has reason to know that one of its employees poses an unreasonable risk of harm to other employees. In *Ford v. Revlon, Inc.* (1987), 153 Ariz. 38, 734 P.2d 580, the plaintiff brought suit against her employer for intentional infliction of emotional distress after the company failed to respond to her repeated complaints regarding offensive sexual advances by her supervisor. The jury found the company liable for intentional infliction of emotional distress, despite its finding that the supervisor was liable only for

assault and battery. In upholding the jury verdict, the Arizona Supreme Court held that a company's failure to investigate a complaint of abusive treatment is independent of the abusive treatment itself and a company may be liable for failing to stop the abusive treatment regardless of whether the treatment itself rises to the level of an actionable tort. *Id.* at 42–43, 734 P.2d at 584–585, citing *Davis v. United States Steel Corp.* (C.A.4, 1985), 779 F.2d 209, 211.

The Georgia court of appeals reached a similar conclusion in *Cox v. Brazo* (1983), 165 Ga.App. 888, 303 S.E.2d 71. In that case, the plaintiff, a counter operator at a fast-food restaurant, sued both her supervisor and the restaurant company for personal injuries resulting from the supervisor's alleged sexual harassment of her during working hours. The trial court granted summary judgment for both defendants, but the court of appeals reversed. The court conceded that the actions of the supervisor were not in furtherance of the fast food-business. However, in justifying its decision, the court stated, "[w]hether a master was negligent in employing an undependable and careless servant is a separate issue from whether an agent is acting within the scope of the master's business. * * * A cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment." *Id.*, 165 Ga.App. at 889, 303 S.E.2d at 73. There was evidence in the record, the court continued, that the company had received several reports in the past of similar behavior by the supervisor toward other female employees. Nonetheless, the company did not fire the supervisor or place him in a position where he would not pose a threat to female employees. Consequently, the court concluded, the trial court had erred in granting summary judgment in favor of the company.[3]

Following the reasoning put forth in the aforementioned cases, we hold that where a plaintiff brings a claim against an employer predicated upon allega-

---

3. This decision was followed in *Coleman v. Hous. Auth. of Americus* (1989), 191 Ga.App. 166, 381 S.E.2d 303. Several federal courts have reached the same conclusion. See, *e.g.*, *Lipsett v. Univ. of Puerto Rico* (C.A.1, 1988), 864 F.2d 881, where the court held that summary judgment was inappropriate where there was a genuine issue of material fact as to whether the university and the administrators of its medical school's surgical residency program knew or should have known of the hostile work environment and quid pro quo sexual harassment of a female program participant but nonetheless failed to take action. See, also, *Yates v. Avco Corp.* (C.A.6, 1987), 819 F.2d 630; *Davis v. United States Steel Corp.* (C.A.4, 1985), 779 F.2d 209; *Hunter v. Allis–Chalmers Corp., Engine Div.* (C.A.7, 1986), 797 F.2d 1417 (applying the same principle to a claim of racial harassment in the workplace).

tions of workplace sexual harassment by a company employee, and where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew or should have known, summary judgment may not be granted in favor of the employer, even where the employee's actions in no way further or promote the employer's business. An employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees, even where the employee's actions do not serve or advance the employer's business goals. Whether the employer has acted appropriately in a particular situation is a factual matter to be determined on a case by case basis. However, where an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing. The appropriate response, which may range in severity from a verbal warning, to a transfer, to a temporary suspension, to a firing, will depend on the facts of the particular case, including the frequency and severity of the employee's actions.

In the case at bar, there is an abundance of evidence indicating that Porter Paint knew or should have known of Levine's perverse sexual proclivities and the danger he posed toward female employees. One of the women who preceded Kerans as a decorator at the Kenwood store testified by means of deposition that she informed company management on four different occasions that Levine was grabbing her breasts. She stated that on two separate occasions she requested a transfer from company management but that in both cases her request was denied. As to the company's reaction, she testified that the company's only response was to call a meeting with Levine at which the district manager casually dismissed the supervisor's behavior with the statement that "boys will be boys." When Levine's behavior continued without response from the management, she left the company.

Another company employee, Donald William Ross, Jr., provided testimony regarding an incident which occurred a few years prior to Levine's alleged harassment of Kerans. According to Ross, Levine sexually molested another female employee at that time. When the incident was reported to company management, the manager told Ross to "take Al to Newport and let him get his rocks off, take him over and show him a good time in Newport." According to Ross's testimony, the manager said nothing about disciplining, firing, or even simply reprimanding Levine. Ross also testified that there were four or five other incidents involving sexual molestation by Levine which were reported to the Porter Paint management *prior* to the incident involving Kerans.

Construing this evidence in the light most favorable to the nonmoving party, Kerans, there is a genuine issue of material fact as to whether Porter Paint knew or through the exercise of reasonable care should have known of the danger which Levine posed to female employees. The evidence suggests that Porter Paint management knew of as many as five different employees whom Levine had victimized on a total of at least eight separate occasions. The evidence further suggests that Porter Paint management trivialized these reports and was entirely unconcerned with the threat which Levine posed to the safety of female employees. Finally, there is nothing in the record which suggests that the management ever fired, demoted, transferred, or even meaningfully disciplined Levine in response to these reports. Consequently, we hold that the trial court erred in granting summary judgment on appellants' second, third, fourth and fifth claims for relief.

We reach a different conclusion as to the appellants' first claim for relief. Specifically, we find that the trial court was correct in dismissing the appellants' first claim for relief. Appellants' first claim provides, in pertinent part,

"2. On or about 9/5/85, plaintiff Sally Kerans while in the course and scope of her employment with defendant Porter Paint Co. and/or otherwise lawfully upon premises owned and/or operated by defendant Porter Paint Company was deliberately, intentionally, unlawfully, wantonly, and/or negligently sexually fondled, touched, expressed, assaulted, threatened, harassed, and/or otherwise traumatically violated, and/or otherwise injured by defendant Levine while acting within the course, scope, and/or apparent authority of his employment with defendant Porter Paint Co.

"3. Said defendants knew and/or should have known of defendant Levine's propensity to engage in such conduct with said plaintiff and/or other employees and either intentionally, wilfully, wantonly, and/or negligently maintained a policy of encouraging, permitting, and/or condoning such sexual conduct or harassment by defendant Levine * * *."

As an initial matter, we note that we cannot accept the rationale offered by the court of appeals for dismissing the appellants' first claim. Although the trial court simply dismissed the entire complaint without stating its reasons, on appeal the parties raised the issue of whether the first claim in the complaint met the standards for an "employer intentional tort" enumerated in *Van Fossen v. Babcock & Wilcox Co., supra,* and its progeny. Appellee has argued that appellant cannot satisfy the *Van Fossen* test because there is no evidence indicating that appellant's injury was "substantially certain to occur." Appellants counter that Porter Paint's awareness of Levine's past history of sexually sordid behavior raises a genuine issue of material fact as to whether the appellee knew that the injury appellant suffered was "substan-

tially certain to occur." In its opinion, the court of appeals accepted appellee's argument and upheld the dismissal of appellants' "employer intentional tort" claim.

We find that *Van Fossen* and its progeny are totally inapplicable to appellants' first cause of action. We reach this conclusion for several reasons. Initially, we note that appellants' first claim alleges that the appellee acted intentionally, willfully, wantonly, *and/or negligently* in allowing one of its employees to sexually molest other employees. *Van Fossen* and its progeny apply only in cases where the employer's conduct is solely intentional. Summary judgment may not be granted in favor of a defendant on the basis of the strict intent standard laid out in *Van Fossen* where the plaintiff's claim contains allegations of employer negligence arising out of sexually harassing conduct in the workplace.

Secondly, this court has never applied *Van Fossen* and its progeny to purely emotional injuries which have psychological, but no physical, consequences. We are not prepared to take that step today since the issue has not been squarely presented to us. Moreover, when the test set forth in *Van Fossen* is applied to the question of an employer's knowledge of an employee's sexually harassing behavior, it becomes glaringly obvious that this tort was not under consideration when the test was formulated. For example, a plaintiff must prove "knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation." *Id.* at paragraph five of the syllabus. There is no reference in this language to a human being and this court believes that even the most abstract thinkers would have to stretch their imaginations to new limits to conceive of Levine as a "process, procedure, or instrumentality."

Finally, there is no legitimate policy reason for subjecting a plaintiff who experiences sexual harassment in the workplace to the heightened intent standards enumerated in *Van Fossen.* The passage of Section 2000e *et seq.*, Title 42, U.S.Code, the enactment of R.C. Chapter 4112, and this court's recent decision in *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, reflect Ohio's strong public policy against workplace-based sexual harassment. It would contravene this policy to force victims of sexual harassment to prove that their claims meet a strict test devised as an exception to a remedial scheme which fails to provide victims of sexual harassment with a true remedy. Thus, we cannot accept the rationale offered by the court of appeals for dismissing the appellants' first cause of action.

Nevertheless, we conclude that the appellants have failed to state a separate claim for relief in their first count. As far as it pertains to appellee, appellants' first claim for relief is essentially duplicative of their other claims.

It repeats the allegations of assault and battery contained in their second claim for relief. It also repeats, albeit using different language, the allegation contained in the fourth count that the appellee either intentionally or negligently failed to provide the appellant with a safe work environment by encouraging, permitting, or condoning Levine's sexually harassing behavior. Beyond that, the count contains no other allegations amounting to a cognizable cause of action as against appellee. Consequently, we conclude that the trial court was correct in dismissing the appellants' first claim for relief.

The judgment of the court of appeals is affirmed in part and reversed in part and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

Sweeney, Douglas and H. Brown, JJ., concur.

Moyer, C.J., Holmes and Wright, JJ., dissent.

Holmes, J., dissenting. I am in sympathy with the majority in its attempt to benefit individuals who have been victimized by some form of sex-based harassment; however, I cannot join the majority in its creation of a new tort against an employer which has no foundation in common law.

As a threshold to this discussion, I should point out that the majority has failed to define what conduct constitutes a cause of action for "sexual harassment." Thus, I am unable to discern what elements constitute a cause of action for this new tort.[4]

---

4. It is impossible to state with any precision what conduct constitutes "sexual harassment." In light of federal law, two elements seem necessary. One, the alleged conduct must be conduct which would not occur but for the sex of the employee or conduct that is sexual in nature (either manifested physically or psychologically). See rules of the United States Equal Employment Opportunity Commission, Section 1604.11(a), Title 29, C.F.R. (sexual harassment requires "conduct of a sexual nature"); see, also, *McKinney v. Dole* (C.A.D.C.1985), 765 F.2d 1129, 1138 ("any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII"); *Hall v. Gus Constr. Co.* (C.A.8, 1988), 842 F.2d 1010 (intimidating and hostile acts by male coworkers, even if not clearly sexual, may be considered in determination of sexual harassment claim). Two, the sexual conduct must be unwelcome. See *Gan v. Kepro Circuit Systems* (E.D.Mo. 1982), 28 Fair Emp.Prac.Cas. (BNA) 639, 1982 WL 166; *Reichman v. Bur. of Affirmative Action* (M.D.Pa.1982), 536 F.Supp. 1149, 1177; *Ferguson v. E.I. duPont de Nemours & Co., Inc.* (D.Del.1983), 560 F.Supp. 1172, 1196; *McLean v. Satellite Technology Serv., Inc.* (E.D.Mo. 1987), 673 F.Supp. 1458.

I

## Common–Law Remedies

The majority states that "there is no legitimate policy reason for subjecting a plaintiff who experiences sexual harassment in the workplace to the heightened intent standards enumerated in *Van Fossen* [*v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489]." The majority concludes that *Van Fossen* and its progeny are inapplicable to claims of workplace sexual harassment. However, the majority holds that an employer may still be held liable at common law for either willfully or negligently permitting one of its employees to sexually molest other employees. The majority supports its position for this new tort by citing federal and state statutes as well as case law from other jurisdictions. I believe the majority has erred on several grounds.

There is clearly no common-law remedy for sexual harassment, in and of itself, in Ohio. The majority cites no case law establishing such a remedy.[5] Further, a survey of several state jurisdictions fails to glean any authority for such a cause of action outside state or federal legislation. See, *e.g., White v. Benedict College, Inc.* (1986), 288 S.C. 572, 344 S.E.2d 147 (the Supreme Court of South Carolina held that a complaint setting forth a cause of action for sexual harassment was insufficient since it was "a tort which is not recognized in South Carolina"); *Becker v. Automatic Garage Door Co.* (1990), 156 Wis.2d 409, 413–414, 456 N.W.2d 888, 890 (the Court of Appeals of Wisconsin rejected a common-law cause of action alleging that an employer permitted sexual harassment, because the Wisconsin Fair Employment Act had been created to remedy the absence of a common-law right of recovery); *Fisher v.*

---

As noted *infra* in this commentary, the overwhelming majority of case law (common law) with respect to "sexual harassment" has come from courts interpreting either state discrimination statutes, federal guidelines set by the Equal Employment Opportunity Commission, or Title VII of the Civil Rights Act of 1964.

5. The majority alludes to *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, for the proposition that there is precedent for sexual harassment claims in Ohio. Even a cursory review of *Helmick* reveals that this court meant only that the alleged victim could pursue traditional common-law actions such as assault and battery. As stated in *Helmick:*

"R.C. Chapter 4112 was intended to add protections for victims of sexual harassment rather than reduce the protections and remedies for such conduct. While discretionary hiring practices, discriminatory promotions and discriminatory discharges are not actionable at common law absent an express contract, the express purpose of R.C. Chapter 4112 is to deter these practices and provide a remedy where none existed under state law. * * * [I]t would defy logic to conclude that the General Assembly intended to make it impossible for victims of sexual harassment to obtain damages when an employer's conduct constitutes a common-law tort, regardless of the motivation for such conduct." *Id.* at 135, 543 N.E.2d at 1216.

*San Pedro Peninsula Hosp.* (1989), 214 Cal.App.3d 590, 604, 262 Cal.Rptr. 842, 849 ("Plaintiffs' claims for harassment and retaliation are founded on the provisions of FEHA [California Fair Employment and Housing Act] and are based exclusively on that statutory scheme since FEHA is not a codification of preexisting common law."). Nevertheless, tort law does provide remedies for victims of sexual harassment. For example, actions have been brought under the theories of assault and battery.[6] However, these claims each have their own distinct elements, which may not be blurred by lumping them into a general claim for sexual harassment.

As noted by the majority, there is a viable issue in this case as to whether the employer is liable based upon the doctrine of *respondeat superior.* Generally, common-law principles of agency govern relationships in which one person acts for another by the latter's authority. These principles provide that an employer may be subject to liability for the wrongful acts of its employees committed while in the scope of their employment. Restatement of the Law 2d, Agency (1958) 481, Section 219(1). And, even where the acts are not in the scope of employment, a master can still be held liable if he was negligent or reckless.[7] *Id.,* Section 219(2)(b). However, the further away from the scope of authority the employee acts, the less likely it will be that the employer will be found liable. *Id.* at 520, Section 235 ("An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed."); see, also, *id.* at 506, Section 229 (kinds of conduct within scope of employment). Thus, under agency principles, common-law actions by victims of torts committed in the workplace were very limited.

II

Exclusivity Provisions of Section 35, Article II
of the Ohio Constitution and R.C. 4123.74

In *Van Fossen v. Babcock & Wilcox* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, this court defined a limited exception to the exclusivity provisions of the workers' compensation scheme in cases of "intentional torts" committed against employees, the intent of the employer in such tort cases being an

---

6. Examples of exceptions to the exclusivity rule for the intentional torts of assault and battery may be found in the following cases: *Boek v. Wong Hing* (1930), 180 Minn. 470, 231 N.W. 233 (employer struck employee with broom handle); *Magliulo v. Superior Court* (1975), 47 Cal.App.3d 760, 121 Cal.Rptr. 621 (employer physically assaulted employee).

7. Liability for negligence or reckless conduct would ordinarily be precluded in Ohio due to the exclusivity clause contained in R.C. 4123.74 and Section 35, Article II of the Ohio Constitution.

inferred intent. However, we observed that no such exception existed for any so-called common-law unintentional torts. *Id.*, 36 Ohio St.3d at 111–114, 522 N.E.2d at 499–502. As this court stated in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 508, 433 N.E.2d 572, 577:

"The workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act. The Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability. But the protection afforded by the Act has always been for *negligent* acts and not for intentional conduct." (Emphasis added and footnotes omitted.) See, also, *Van Fossen, supra,* 36 Ohio St.3d at 111, 522 N.E.2d at 499–500. As explained *infra,* even assuming *arguendo* that a party could bring a sexual harassment claim at common law, the action would today be precluded by the exclusivity provisions of the workers' compensation scheme contained in R.C. 4123.74 [8] and Section 35, Article II of the Ohio Constitution.

In reviewing counts one through five of the complaint in the case *sub judice,* I find allegations of intentional and negligent or wanton conduct attributed to the employer. The query before this court is how to characterize the plaintiff's claims in order to ascertain whether a cause of action has been set forth.

Clearly, Kerans is prohibited from maintaining a negligence action against her employer as alleged in counts one, three and four, since such actions are barred by the exclusivity provisions of R.C. 4123.74 and Section 35, Article II of the Ohio Constitution, notwithstanding a determination that Kerans is ineligible to receive workers' compensation. This, however, would not prevent

---

8. R.C. 4123.74 provides:

"Except as authorized in section 4121.80 of the Revised Code, employers who comply with section 4123.35 of the Revised Code *shall not be liable to respond in damages at common law* or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, *whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94 of the Revised Code.*" (Emphasis added.)

Kerans from seeking redress via a Title VII action and/or relief under R.C. Chapter 4112.

As for the intentional conduct alleged in counts one, three and four of the complaint (since the majority has characterized count two of the complaint as alleging assault and/or battery, I see nothing precluding the Keranses from maintaining this action as discussed *supra* in fn. 6 and the preceding discussion therein), the Keranses seemingly are not entitled to bring a common-law action outside the Workers' Compensation Act due to the exclusivity provisions contained in R.C. 4123.74 and Section 35, Article II of the Ohio Constitution.[9] As the majority correctly states, "this court has never applied *Van Fossen* and its progeny to purely emotional injuries which have psychological, but no physical, consequences." Thus, common-law intentional tort claims brought by employees, outside the workers' compensation scheme, alleging purely emotional injuries which have psychological, but no physical, consequences appear to be precluded by the Act.

This court should be very reluctant to adopt wholesale exceptions to the exclusive-remedy rule established by the General Assembly and framers of the Ohio Constitution. Traditionally, we have been reluctant to adopt exceptions to the exclusive-remedy rule and this position has come from an unwillingness to tamper with the terms of a legislative bargain provided in exchange for the relinquishment of some prior vested rights. Either an expansive interpretation of the intentional tort exception or the development of new negligent tort actions would thwart the basic purpose of the statutory and constitutional scheme by eroding the exclusivity of remedy provided by the Workers' Compensation Act. See *Van Fossen, supra,* 36 Ohio St.3d at 113, 522 N.E.2d at 501; *Kofron v. Amoco Chemicals Corp.* (Del.1982), 441 A.2d 226.

Accordingly, I would not permit the Keranses to proceed on those claims against the employer which allege common-law intentional misconduct either directly or vicariously through one of its employees (except for those claims alleging assault and/or battery), and I would dismiss both the negligence and intentional tort claims (except for count two of the complaint) as being precluded by R.C. 4123.74 and Section 35, Article II of the Ohio Constitution.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

---

9. The remedy provided under the workers' compensation laws was made the exclusive remedy by the amendment to Section 35, Article II, effective January 1, 1924, which provides in pertinent part:

"* * * Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law * * * *shall not be liable to respond in damages at common law* or by statute for such death, injuries or occupational disease." (Emphasis added.)