OPINION
{¶ 1} Plaintiff-appellant, Susan Simpson, appeals from a judgment of the Ohio Court of Claims ruling in favor of defendant-appellee, the Ohio Reformatory for Women ("ORW"), on her claims for negligent infliction of emotional distress, negligent supervision, and constructive discharge.
 {¶ 2} This action arises out of plaintiff's employment with ORW. From August 1996 until November 1999, plaintiff was employed at ORW in the medical records department as an "office assistant 3." According to plaintiff's trial testimony, from December 1996, until she resigned from her position at ORW in November 1999, plaintiff was subjected to almost continuous harassment by one or more unidentified co-workers. As a result of the continual workplace harassment, plaintiff claimed that she suffered severe emotional distress and was forced to quit her job with ORW.
 {¶ 3} Plaintiff's testimony reveals that the bulk of the incidents of harassment directed at her involved tampering with her work area, office equipment, or work product. For example, plaintiff testified that on various occasions when she arrived at work in the morning she found documents which she had left on her desk the night before soiled or crumpled up, all of her office equipment and supplies distributed around the office or on the floor next to her desk, her desk chair adjusted to the lowest possible level, or her desk covered in debris, including one time in which it appeared that someone had emptied the "dots" from all the office hole punches onto her desk. Additional incidents of alleged harassment included the time plaintiff returned to her desk after being away a short while to find that the contents of a one-pound bag of pretzels that she had on her desk had been smashed and then poured all over her desk, keyboard, and work area; the time plaintiff arrived at work to find that the metal cart she had purchased for work had been damaged beyond repair; and the several occasions on which plaintiff discovered that mail that she had recently placed in staff members mailboxes as part of her job duties had been removed from the correct mailboxes and placed in the wrong mailboxes or simply thrown in the wastebasket below the mailboxes.
 {¶ 4} Plaintiff also described several incidents in which offensive or inappropriate comments were made about her. For example, plaintiff described an incident in which a "Far Side" cartoon, that had been altered such that the names of the characters in the cartoon were changed to the names of several ORW employees, including plaintiff, was placed on her chair. As altered, the cartoon suggested that plaintiff was receiving favorable treatment from ORW's deputy warden. On another occasion, while plaintiff was away from her desk, someone wrote "nasty bitch" across the bottom of a document that was on plaintiff's desk.
 {¶ 5} Plaintiff testified that she reported almost every incident of harassment to Mary Miller, ORW's healthcare administrator. Plaintiff also repeatedly reported the fact that she was being harassed to ORW's chief institutional investigator, James Hoffman, and on several occasions made her complaints known to ORW's deputy warden. Despite plaintiff's repeated complaints, ORW did nothing to stop the harassment. In fact, plaintiff testified that, after she started to complain about the harassment, the situation actually got worse.
 {¶ 6} According to plaintiff, the stress caused by the constant harassment at work eventually caused her to suffer from panic attacks, constant headaches, stomach problems, heart palpitations, anxiety, and depression. As a result of these symptoms and the fact that ORW refused to take any action to stop the workplace harassment directed at her, she resigned her position with ORW in November 1999.
 {¶ 7} On February 11, 2000, plaintiff filed a complaint in the Ohio Court of Claims asserting claims for retaliation, intentional infliction of emotional distress, hostile work environment, public policy violations under R.C. 4101.11 through 4101.13, emotional battery, disparate treatment, unsafe work environment, negligent retention of an employee, negligent supervision, and constructive termination against ORW. Beginning on July 9, 2001, plaintiff's claims were tried to the Court of Claims. During closing argument, plaintiff notified the trial court that she would only be pursuing her claims for intentional infliction of emotional distress, retaliation, negligent supervision, and constructive discharge. On April 22, 2002, the trial court issued a decision and filed a judgment entry finding for ORW on all four of plaintiff's claims. Plaintiff appeals therefrom assigning the following errors:
 {¶ 8} "1. The trial court erred in denying plaintiff cause of action for intentional infliction of emotional distress.
 {¶ 9} "2. The trial court erred in denying plaintiff cause of action for negligent supervision.
 {¶ 10} "3. The trial court erred in denying plaintiff cause of action for constructive discharge."
 {¶ 11} Each of plaintiff's assignments of error assert that a ruling of the trial court was against the manifest weight of the evidence. It is well-established that a judgment which is supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court on the grounds that the judgment is against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. This rule rests on the principle that the trial court is better positioned than a reviewing court to judge the credibility of witnesses and weigh the value of competing testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 12} In her first assignment of error, plaintiff challenges the trial court's ruling for ORW on her claim for intentional infliction of emotional distress. In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff is required to establish the following: (1) the defendant either intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) the defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff is serious and of such a nature that no reasonable person could be expected to endure it. Oglesby v. Columbus, Franklin App. No. 01AP-1289, 2002-Ohio-3784, at ¶ 12-14.
 {¶ 13} In pursuing her claim for intentional infliction of emotional distress against ORW, plaintiff did not seek to establish that ORW's conduct was itself "extreme and outrageous." Rather, plaintiff sought to hold ORW vicariously liable for the extreme and outrageous harassment allegedly perpetrated against her by one or more unidentified ORW employees. Ordinarily, an employer is not liable for the intentional torts of its employees unless it can be shown that the intentional tort was in furtherance of the employer's business. Byrd v. Faber (1991),57 Ohio St.3d 56, 58. However, in Kerans v. Porter Paint Co. (1991),61 Ohio St.3d 486, the Ohio Supreme Court held that, where an employer knows or has reason to know that an employee is sexually harassing another employee, but fails to take corrective action against the harassing employee, the employer can be held liable for the sexual harassment, even if the harassment was not in furtherance of the employer's business. In seeking to hold ORW liable on her claim for intentional infliction of emotional distress, plaintiff sought to extend the Kerans' holding to allegations of non-sexual harassment. The trial court allowed plaintiff to proceed on this theory,[1] but concluded that ORW had adequately addressed plaintiff's complaints of harassment. Plaintiff now contends that the record does not support the trial court's conclusion that ORW adequately addressed her complaints of harassment.
 {¶ 14} The record contains evidence that both plaintiff's immediate superior, Miller, and ORW's lead investigator, Hoffman, looked into plaintiff's complaints of harassment to determine if anyone was actually harassing plaintiff. In particular, Miller testified as follows:
 {¶ 15} "* * * Over that period of time [the period during which the alleged incidents of harassment occurred], I am sure that I talked to every single medical employee about whether they were doing anything, whether they saw anybody doing anything, whether they felt they might have heard somebody was doing something. You know, I didn't talk to them all at once, and I didn't talk to them all every single time; but during that period of time, I talked to everybody that worked there, and nobody said they knew anything about it, nobody said they knew anything about anybody doing it. * * *"
 {¶ 16} In addition, the record contains evidence that ORW took steps to alleviate plaintiff's discomfort by allowing her to lock her office supplies up in the evening and asking other office employees to refrain from using her desk or equipment. In the sole incident in which the perpetrator was identified, the case of the altered "Far Side" cartoon, the perpetrator was required to apologize to plaintiff.
 {¶ 17} Finally, Miller testified that it was possible that one of the inmate clerks who worked in the medical records office was responsible for some of the incidents about which plaintiff complained, as plaintiff had angered several inmate clerks by treating them poorly.
 {¶ 18} In challenging the trial court's conclusion, plaintiff points to the testimony of several other witnesses that contradict Miller's testimony that she spoke to every employee in the department about plaintiff's complaints. The trial court, however, was free to accept Miller's testimony and disregard the competing testimony. State v. Nahhas, Trumbull App. No. 2001-T-0045, 2002-Ohio-3708, at ¶ 34.
 {¶ 19} While ORW did not conduct a full-blown investigation into plaintiff's complaints of harassment, as plaintiff would have liked, given that plaintiff was never able to identify the perpetrator or perpetrators of her alleged harassment and that most of the alleged incidents of harassment could have resulted from the innocent actions of careless co-workers, the actions taken by ORW in response to plaintiff's complaints satisfy the requirements of Kerans.
 {¶ 20} Plaintiff's first assignment of error is overruled.
 {¶ 21} In her second assignment of error, plaintiff challenges the trial court's ruling for OWR on her claim for negligent supervision. In order to prevail on her claim for negligent supervision, plaintiff was required to establish that: (1) misconduct by an ORW employee caused her harm; (2) the employee had a propensity for misconduct of the type which caused her harm; (3) ORW had actual or constructive knowledge of the employee's propensity for the type of misconduct at issue; and (4) ORW's negligence in supervising the employee was the proximate cause of her injuries. Harmon v. GZK, Inc., Montgomery App. No. 18672, 2002-Ohio-545; Steppe v. Kmart Stores (1999), 136 Ohio App.3d 454, 465.
 {¶ 22} Because plaintiff never identified a specific ORW employee as the individual responsible for her harassment, her claim for negligent supervision must be construed to allege that ORW negligently failed to supervise the entire medical records staff. In denying that claim, the trial court determined that plaintiff had failed to prove that ORW was negligent in its supervision of the medical records staff. In particular, the trial court concluded that the actions taken by Miller and Hoffman in response to plaintiff's complaints of harassment were sufficient under the circumstances. We agree with the trial court. As discussed above under plaintiff's first assignment of error, there is evidence in the record that both Miller and Hoffman questioned members of the medical records staff about plaintiff's claims of harassment and allowed plaintiff to take some steps to keep others from using her office supplies and equipment. In addition, however, plaintiff's negligent supervision claim fails because plaintiff failed to show that ORW was aware that one or more of its employees had a propensity to harass other employees. Because most of the alleged incidents of harassment in the present case were such that they could have resulted from careless, but innocent conduct, plaintiff's repeated complaints of harassment by an unknown ORW employee were by themselves not sufficient to put OWR on notice that one or more of its employees had a propensity for such misconduct.
 {¶ 23} Plaintiff's second assignment of error is overruled.
 {¶ 24} In her third assignment of error, plaintiff challenges the trial court's ruling for ORW on her claim for constructive discharge. "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, paragraph four of the syllabus. In applying this test, "courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to struggle with the inevitable simply to attain the `discharge' label." Mauzy, at 589.
 {¶ 25} Here, plaintiff presented absolutely no evidence that her termination was objectively imminent. While it is clear that plaintiff was unhappy with the manner in which ORW dealt with her claims of harassment, ORW's failure to conduct a full-blown investigation into plaintiff's allegations of harassment does not suggest that ORW was interested in terminating plaintiff's employment. An employee has an obligation not to jump to conclusions and assume that every conflict with an employer evidences a hidden intent by the employer to terminate the employment relationship. Jackson v. Champaign Nat'l. Bank Trust Co. (Sept. 26, 2000), Franklin App. No. 00AP-170. Although ORW was clearly exasperated with plaintiff's repeated complaints of harassment, there is simply no evidence that it was planning to terminate her employment at the time she resigned her employment.
 {¶ 26} Plaintiff's third assignment of error is overruled.
 {¶ 27} Plaintiff's three assignments of error having been overruled, the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
BOWMAN and KLATT, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The issue of whether the holding in Kerans is applicable to allegations of non-sexual harassment has not been raised on appeal and we express no opinion on that issue.