Charles WALLACE, Plaintiff–
Appellant,

v.

INDUSTRIAL POWDER COATINGS, INC.; Sudbury Company; Union of Needletrades, Industrial and Textile Employees, Local 2403; and Union of Needletrades, Industrial and Textile Employees, Defendants–Appellees.

No. 03–4044.

United States Court of Appeals,
Sixth Circuit.

Aug. 17, 2004.

Howard V. Mishler, Westlake, OH, for Plaintiff–Appellant.

Robert H. Brown, Neil Stern, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Chicago, IL, Laura J. Roman, Joseph M. D'Angelo, Cosme, D'Angelo & Szollosi, Toledo, OH, for Defendants–Appellees.

Before BOGGS, Chief Judge; DAUGHTREY, Circuit Judge; and WISEMAN,* District Judge.

PER CURIAM.

Charles Wallace appeals from the district court's grant of summary judgment to his former employer, Industrial Powder Coatings, Inc., and its parent company ("Industrial"), as well as his union, the Union of Needletrades, Industrial and Textile Employees (UNITE), Local 2403 (the "Union"),[1] in this hybrid action under § 301 of the Labor–Management Relations Act and § 9 of the National Labor Relations Act. *See* 29 U.S.C. §§ 159(a), 185. Wallace's complaint alleged that Industrial broke the collective bargaining agreement when it discharged him for a physical altercation with a fellow employee, and that the Union failed to represent him properly when it declined to seek arbitration of his grievance. He also asserted pendant tort claims against Industrial. On appeal, Wallace disputes the district court's holding that he failed to raise a genuine issue of material fact as to these claims. Wallace's one federal claim clearly lacks merit, and the remaining claims are subject to dismissal for lack of federal jurisdiction. Therefore, we affirm the district court's judgment, but modify it to dismiss two of Wallace's claims without prejudice.

I

Wallace worked for Industrial from 1997 until his discharge for cause on October 30, 2000. Industrial's collective bargaining agreement (CBA) with the Union grants Industrial an exclusive right to "discipline [employees], including the discharge of employees for just cause or reason." The company's list of plant rules and regulations, which incorporates the CBA by reference, recognizes a category of "Group # 1 violations" that may subject an employee to "immediate termination." Number three on that list is "Fighting or disorderly conduct on Company property including the parking lot." Wallace admits that he was disciplined in April 1998 for violating this rule, and was put on probation for 60 days.

---

* The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1. Wallace has also sued the national parent union of his UNITE local. His theory is that his local acted as an "agent" of the national union during the events at issue in this case. Because Wallace's only claim against the local is nonmeritorious, as explained herein, we need not consider this somewhat novel "agency" argument.

On October 28 or 29, 2000, Wallace had a verbal exchange with a fellow employee, Walt Shelby. Shelby had apparently been given a less desirable job assignment than Wallace, and Wallace taunted him by singing a country song involving the words "How do you like me now?" Wallace contends that his supervisor told him to cease making fun of Shelby, and that he did so. He also claims that Shelby sent a message through another employee, threatening to "kick [Wallace's] ass."

Later that day, Shelby bumped into Wallace. Wallace contends that he was knocked back and fell to the floor. Wallace has offered differing accounts of what happened next. In his complaint, never amended, Wallace states that he "pushed" Shelby back. The complaint goes on to argue that Wallace "had a right to defend himself and use reasonable force" to prevent bodily harm. However, in his answers to interrogatories, and in an affidavit, Wallace stated that he never pushed Shelby. In that affidavit, and on appeal, he contends that he simply "raised his other hand to ward off any further attack from . . . Shelby."

Shortly thereafter, Wallace told management about the incident. On October 30, 2000, Industrial terminated both Wallace and Shelby for violating the rule against fighting. Wallace complained that he was not the aggressor and did not deserve to be fired. The Union filed a grievance on Wallace's behalf, and investigated. It interviewed Wallace several times and spoke with other witnesses. Ron Osborne, the Union's investigator, testified in an affidavit that the other witnesses agreed to a consistent sequence of events: Wallace taunted Shelby, Shelby pushed Wallace, and Wallace pushed back. Osborne also contended that Wallace changed his story in the course of the investigation. At first, he admitted pushing Shelby but claimed

self-defense; then he stated that he did not push him; then, at a later meeting during the grievance process, he admitted shoving Shelby. Wallace denies changing his story, but the discrepancies between his complaint and his later filings tend to belie this claim.

The grievance was pursued to stage three of the procedures established by the CBA. At this stage, the Union decides whether to arbitrate the grievance. At that point, Industrial stated that its position was that Wallace was discharged under the company's "zero tolerance" policy for fighting, under which both participants in a fight were to be disciplined without regard to who started it. The Union had attempted to challenge the fairness of the "zero tolerance" policy for fighting in arbitration before, but had not been successful. The Union chose not to pursue arbitration of Wallace's grievance. Wallace did not attempt to appeal this decision to the national Union. He argued below that the Union failed to inform him of his right to appeal, but the Union produced a copy of its certified letter to Wallace explaining his right to appeal.

Wallace filed suit against Industrial, the Union, and the Union's parent in federal district court on March 14, 2002. Count One was a hybrid § 301 claim that Industrial breached the collective bargaining agreement by firing him under circumstances contrary to its policies, and that the Union failed to represent him adequately.

Wallace also appended two counts asserting tort claims of an undefined nature against Industrial. Count Two contended that Industrial "breached [a] duty to provide a safe work place," by applying the zero-tolerance policy to Wallace and by failing to "admonis[h]" Shelby after Shelby pushed Wallace, since, Wallace asserted, Shelby "act[ed] menacingly" toward him

on the day after the scuffle. However, Wallace provided no details of the alleged menacing conduct. Wallace's Count Three was opaque. At one point, he appeared to be asserting that his discharge constituted age discrimination. He observed that both Wallace (age 26) and Shelby (in his fifties) were discharged for fighting, but asserted that this was discrimination because Shelby was the aggressor. He also requested "that this court declare and determine that Plaintiff comes within the exception to the zero tolerance rule which excepts the victim" and reinstate him.

The district court granted all defendants' motions for summary judgment. It held that the Union's decision not to arbitrate was reasonable in light of its investigation, which turned up evidence that Wallace had taunted Shelby, had pushed him back, and had changed his story during the investigation. The court also held that the "zero tolerance" policy was a reasonable exercise of management's right to regulate employee discipline.

Wallace timely appealed.

**II**

The law regarding a hybrid § 301 action is well settled. Such an action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union. *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir.2003) (citing authorities). Unless a plaintiff demonstrates both violations, he cannot succeed against either party. *Ibid.* In order to prove a breach of the duty of fair representation, a plaintiff must prove that the union's actions or omissions during the grievance process were either arbitrary, discriminatory, or in bad faith.

*Ibid.* Each of these three possibilities must be considered separately. With regard to the heading of "arbitrary" conduct, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (internal quotation marks omitted). Courts do not elaborate to the same extent on the issue of whether a union has acted discriminatorily or in bad faith, stating that this "ordinarily presents a simple and straightforward issue." *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 584 (6th Cir.1994).

Wallace does not specify whether he believes the Union's failure to arbitrate his claim was arbitrary, discriminatory, in bad faith, or some or all of these, though his brief states at one point that the union acted "arbitrarily." Appellant Br. at 15. But Wallace has offered no meaningful evidence that any of these categorizations apply to his case. While he contends that the Union "never challenged the factual portrayal concerning the physical contact of . . . Wallace with . . . Shelby and in not doing so tainted the result of the grievance process," Appellant Br. at 13. Wallace does not dispute that he had a history of discipline for violating the rule against fighting. He does not dispute that the Union spoke with Wallace, Shelby, and other witnesses before deciding not to arbitrate, nor that the witnesses said that Wallace taunted Shelby and pushed him back. Moreover, he does not dispute that the Union had brought unsuccessful challenges to Industrial's "zero tolerance" fighting policy before. That being so, he has failed to raise a genuine issue of material fact as to whether the Union acted

arbitrarily.[2]

As to "discrimination," Wallace has presented no evidence of that either. His complaint seems to suggest that the difference in age between himself and Shelby is relevant, but it is not: Shelby and Wallace were treated the same—both were fired. Wallace would have to point to a similarly situated older employee who was *not* treated the way Wallace was. He has not done so.

As to "bad faith," Wallace asserts at one point that the Union "decided to forego arbitration because it felt Plaintiff-Appellant was at fault for the confrontation." This assertion is conclusory; Wallace has not supported it with record evidence. It also would not raise an issue of bad faith even if unquestionably true. The Union's alleged "real motivation"—a belief that Wallace was at fault—is in fact a plausible conclusion to reach in light of the information that the Union gathered about the incident through its investigation, and is a reasonable basis for not pursuing a grievance to arbitration.

Thus, the district court was clearly correct to hold that Wallace failed to raise a triable question as to whether the Union violated its duty of representation. Accordingly, all Wallace's federal claims fail as to all defendants. *Garrison,* 334 F.3d at 538.

That being so, the only claims that remain are those that appear to arise under state law. In support of his Count Two, for failure to provide a safe workplace, Wallace cites the well-known Ohio sexual

harassment case of *Kerans v. Porter Paint Co.,* 61 Ohio St.3d 486, 575 N.E.2d 428 (1991). As for Wallace's Count Three (which he has not discussed on appeal), it appears to be an age discrimination claim. Wallace's complaint offers no indication of whether this claim is meant to arise under federal law or Ohio law. Because the basis for federal jurisdiction must appear on the face of the plaintiff's well-pleaded complaint, *Husvar v. Rapoport,* 337 F.3d 603, 607 (6th Cir.2003), we construe this as a claim under the Ohio age discrimination statute.

It seems rather plain to us that Count Three is defective on the merits, because, as noted above, Wallace has failed to point to any similarly-situated person who was treated better than him. But since it is a state-law claim, like Count Two, it is subject to dismissal on jurisdictional grounds, without prejudice. When all federal claims have been dismissed at a pretrial stage, and the parties are non-diverse, as here, federal courts should decline to exercise supplemental jurisdiction over surviving state-law claims. *See Hankins v. The Gap, Inc.,* 84 F.3d 797, 802–03 (6th Cir. 1996); *Taylor v. First of Am. Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992). Thus, to the extent there is any substance to Wallace's Counts Two and Three, he may attempt to pursue them in state court.

**III**

For the reasons discussed above, the district court's grant of summary judg-

**2.** Apparently seeking to support a claim of "arbitrariness," Wallace asserts that Industrial acted suspiciously. He contends that his supervisors knew of the scuffle with Shelby as soon as it happened, yet took no action until Wallace later approached them to complain about Shelby's "menacing" conduct. *See* Appellant Br. at 15–16. First of all, this occurred at most two days after the incident.

Second, even if Wallace can raise a fact issue as to whether *Industrial* acted in a fashion that might be called "arbitrary" in choosing to discharge him, that cannot avail him in this hybrid § 301 action unless he can also show that the *Union* acted arbitrarily in declining to pursue arbitration. As discussed above, he cannot show this.

ment to all defendants on Count One is AFFIRMED. Wallace's Counts Two and Three are dismissed without prejudice for lack of federal jurisdiction.