{¶ 73} I concur in the majority's opinion as to the affirmation of summary judgment in favor of defendants-appellees Bill Callahan and Terry Larson. I respectfully dissent from the opinion as to the reversal of summary judgment against the General Electric Company and Joanne Deibold nka O'Neil.
 {¶ 74} Contrary to the majority's opinion, General Electric's conduct does not, as a matter of law, rise to the level of extreme and outrageous conduct necessary to *Page 22 
sustain a viable claim of intentional infliction of emotional distress. Cf. Anthony v. TRW, Inc. (N.D. Ohio 1989), 726 F.Supp. 175, 181 ("[m]ere harassment is not enough; neither is humiliation or embarrassment").
 {¶ 75} If "mere harassment" is not enough to sustain an intentional infliction of emotional distress claim, it is impossible to understand how mere temporary tolerance of mere harassment is sufficient.
 {¶ 76} The most that can be said of General Electric's response to the harassment of Tenney is that it was dilatory. As the majority acknowledges, General Electric never condoned the harassment of Tenney. Graffiti may have remained on the wall for months, but it was eventually removed. An employee may have harassed Tenney for months, but the employee was made to stop.
 {¶ 77} The majority identifies the incident "that stands out" as O'Neil's alleged sexual groping of Tenney. Assuming this incident occurred, there is no evidence that General Electric was responsible for it, could have prevented it, or that General Electric failed to investigate it. The evidence is undisputed that Tenney filed a grievance and the incident was fully investigated. O'Neil denied making the statements, White denied that O'Neil made any statements to her about the incident, and Tenney was unable to offer any corroborating evidence. Nonetheless, General Electric "reminded" O'Neil of its policy against harassment and of her obligation "to fully abide by it." While this court must accept Tenney's allegations as true, General Electric is under no such obligation. There is simply nothing intolerable about the way in which General Electric responded to the allegations regarding O'Neil. *Page 23 
 {¶ 78} The majority also relies on the incident where Tenney's co-workers allegedly pushed a stack of glass lenses on him, causing permanent injury to his penis. Although Tenney complained of the incident, he did not inform anyone of his alleged physical injury or seek medical treatment for his alleged physical injury.
 {¶ 79} At most, there is evidence that Tenney was threatened by another employee. The failure to discipline that employee, even considered with the failure to immediately remove bathroom graffiti or discipline another co-worker for harassing Tenney, does not rise to the level of extreme and outrageous conduct.
 {¶ 80} This conclusion is compelled by consideration of the case law. In Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 1997-Ohio-219, the defendant-employer was alleged to have physically threatened an employee for reporting OSHA violations, threatened the employee's co-workers that they would "go down" with him for associating with him; placed eleven disciplinary write-ups in his personnel file in four months, secretly videotaped him, and, ultimately, terminated his employment. Id. at 135-136. The Ohio Supreme Court concluded, as did the trial court and this court, "that even after viewing the evidence in a light most favorable to appellant, the record does not support a claim for intentional infliction of emotional distress under standards set forth in Yaeger v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-375." Id. at 163. Cf. Kulch v. Structural Fibers, Inc. (Feb. 10, 1995), 11th Dist. No. 93-G-1824, 1995 Ohio App. LEXIS 504, at *14 ("even if a supervisor threatened to `punch the lights out' of appellant, there is no evidence that this was anything more than an isolated incident by someone acting on his own rather than on behalf of [the employer]"), affirmed in part and reversed in part by 78 Ohio St.3d 134. *Page 24 
 {¶ 81} The case relied on the by the majority, Kerans v. Porter PaintCo. (1991), 61 Ohio St.3d 486, is easily distinguishable. In that case, the Ohio Supreme Court held as follows: "Where a plaintiff brings a claim against an employer predicated upon allegations of workplace sexual harassment by a company employee, and where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew or should have known, summary judgment may not be granted in favor of the employer, even where the employee's actions in no way further or promote the employer's business." Id. at paragraph two of the syllabus.
 {¶ 82} In contrast to Kerans, the incidents perpetuated against Tenney were not the work of a single employee with a known history of harassment. Rather, Tenney alleges a number of isolated and independent acts committed by various persons. Lissi was alleged to have pushed the lenses on Tenney and threatened to cut off his penis. Yet Lissi and Tenney continued to work at General Electric for years thereafter without incident. Tenney's co-worker Greg Dominick made "pig noises" around Tenney, but was told to stop by General Electric and the behavior was discontinued. As noted above, the incidents involving O'Neil have been fully investigated.
 {¶ 83} Moreover, the offending employee in Kerans had a known history of actually molesting other female employees. In the present case, as the majority acknowledges, the incidents Tenney complains of are primarily insults, indignities, and harassment, by themselves not actionable as intentional infliction of emotional *Page 25 
distress. The underlying conduct in the present case and inKerans is not comparable.
 {¶ 84} Finally, the employer in Kerans excused the offending employee's behavior, by claiming that "boys will be boys" and by taking the employee on trips "to get his rocks off." In contrast, as the majority also acknowledges, General Electric has never condoned the harassment of Tenney.
 {¶ 85} As to the claims against O'Neil, the majority goes to great lengths to demonstrate that the "actual nature or subject matter" of O'Neil's alleged groping was mental torture, rather than sexual assault, despite the fact that O'Neil's comments to Tenney do not rise to the level of intentional infliction of emotional distress. The majority somehow divines that O'Neil "was not seeking personal sexual gratification * * * but was * * * deliberately humiliating and inflicting emotional distress on a fellow worker." The basis for the majority's conclusions about O'Neil's motivation is unclear. Ultimately, however, O'Neil's motivation for groping Tenney is irrelevant.
 {¶ 86} A person is liable for battery when they act intending to cause a harmful or offensive contact, that is, "offensive to a reasonable sense of personal dignity," and such harmful or offensive contact results. Love v. Port Clinton (1988), 37 Ohio St.3d 98, 99. In Doe v.First United Methodist Church, 68 Ohio St.3d 531, 1994-Ohio-531, the Ohio Supreme Court concluded that acts of sexual abuse "were clearly intentional acts of offensive touching," and, thus, constituted battery. Id. at 536. "The fact that appellant pled * * * intentional infliction of emotional distress cannot be allowed to mask or change the fundamental nature of appellant's causes of action which are predicated upon acts of sexual battery." Id. at 537. *Page 26 
 {¶ 87} O'Neil's actions toward Tenney were intentional acts of offensive touching. Although she claimed she would give Tenney a "motherly hug," O'Neil's embrace was erotic. In Tenney's words, "my mother never crawled up my body * * * never put [her] lips on my neck and my ear. * * * She was making me physically ill and she was pushing into my sexual body parts." Tenney testified that O'Neil continued to hold him after he tried to pull away and told O'Neil that he wanted to leave. Tenney understood the nature of O'Neil's conduct as a "full sexual encounter."
 {¶ 88} Since O'Neil's conduct constituted battery, Tenney may not recover against O'Neil under a theory of infliction of emotional distress. Nor is Tenney able to recover for battery, since the complaint was filed past the one-year statute of limitations for battery.[41]Doe, 68 Ohio St.3d 531, at paragraph one of the syllabus ("[a] cause of action premised upon acts of sexual abuse is subject to the one-year statute of limitations for assault and battery"); Love,37 Ohio St.3d 98, at syllabus ("[w]here the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs"); Waters v. Allied Machine EngineeringCorp., 5th Dist. Nos. 02AP040032 and 02AP040034, 2003-Ohio-2293, at ¶ 63 ("[a]s [plaintiff's] claim for intentional infliction of emotion distress * * * is premised on the sexual assault, the applicable statute of limitations is one year"); Vandiver v. Morgan Adhesive Co. (1998),126 Ohio App.3d 634, 639 (applying the one-year statute of limitations for assault and battery where "the essential nature of [plaintiff's] claim involves intentional acts of offensive contact"). *Page 27 
 {¶ 89} By reversing the grant of summary judgment against O'Neil and allowing Tenney's claims to go forward under the theory of intentional infliction of emotional distress, the majority establishes precedent whereby any claim of harmful or offensive physical contact could be pursued as a claim for infliction of emotional distress, since any sexual assault is humiliating to the victim. Thus, the express holding of Doe and the intent of Love are circumvented. Love,37 Ohio St.3d at 100 ("by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations") (citation omitted).
 {¶ 90} For the foregoing reasons, the trial court's grant of summary judgment against General Electric and O'Neil should be affirmed.
[41] The incident with O'Neil occurred on or before April 29, 1999. Tenney's complaint was filed September 29, 2000. *Page 1