[Cite as *Armstrong v. John R. Jurgenson Co.*, 2011-Ohio-6708.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

                                    :

SHAUN ARMSTRONG
     Plaintiff-Appellant            :    C.A. CASE NO. 2011-CA-6

vs.                                 :    T.C. CASE NO. 10-CV-212

                                    :    (Civil Appeal from
JOHN R. JURGENSON CO., et al.            Common Pleas Court)
     Defendants-Appellees           :

                . . . . . . . . .

                O P I N I O N

       Rendered on the 23rd day of December, 2011.

                . . . . . . . . .

Jeffrey W. Harris, Atty. Reg. No. 0077098, 9545 Kenwood Road, Suite 301, Cincinnati, OH 45242
     Attorney for Plaintiff-Appellant Shaun Armstrong

Corey V. Crognale, Atty. Reg. No. 0017004, 250 West Street, Columbus, OH 43215
     Attorney for Defendant-Appellee John R. Jurgenson Co.

Colleen Erdman, Atty. Reg. No. 0080765, 150 East Gay Street, 22nd Floor, Columbus, OH 43215
     Attorney for Defendant-Appellee Ohio Bureau of Workers' Compensation

                . . . . . . . . .

     GRADY, P.J.:

     {¶ 1} Plaintiff, Shaun Armstrong, appeals from a final judgment of the court of common pleas that denied Armstrong's claim for workers' compensation benefits on a finding that the post

traumatic stress disorder from which Armstrong suffers is not a compensable injury.

{¶ 2} In August of 2009, Defendant, John R. Jurgenson, Co. ("Jurgenson Co.") was performing work on improvements to Interstate Route 70. Armstrong was employed by Jurgenson Co. as a dump truck driver. On August 27, 2009, a van travelling at a high rate of speed struck Armstrong's fully-loaded dump truck from the rear. The driver of the van was killed. Armstrong suffered physical injuries.

{¶ 3} Armstrong had seen the van as it approached his truck, but was unable to avoid the collision. He braced himself for the impact, which caused Armstrong's head to jerk back and forth and his arm and shoulder to impact against the truck's interior.

{¶ 4} After the impact, Armstrong looked to the rear again and saw that the van was under his truck. After taking the truck out of gear, Armstrong sat momentarily in "total shock." When he looked to the rear through his side-view mirror, Armstrong saw the van driver's head bob up and down. Armstrong called 911 for assistance.

{¶ 5} Armstrong saw that antifreeze, oil, and gasoline were leaking from his truck. Fearing that it might catch fire, Armstrong exited the truck. He then saw that the van driver was severely injured; the van driver's chin was on his chest and blood was coming from his nose. Armstrong waited for assistance to

arrive, believing that the van driver was probably dead.

{¶ 6} Armstrong was removed to a hospital and examined. He was diagnosed as suffering from cervical, thoracic, lumbar and left shoulder sprains, and a left post-labial tear. Armstrong was released the same day. Some months later he underwent surgery for his shoulder injury. Armstrong filed a claim for workers' compensation benefits for these physical injuries. The claim was allowed.

{¶ 7} Soon after the accident, Armstrong began having nightmares from which he awoke in a state of severe anxiety, also experiencing shaking and sweats. His dreams regularly involved being struck inside the dump truck following the accident, unable to get out, seeing the van driver's face, and a slow-motion re-enactment of the van hitting his dump truck.

{¶ 8} Armstrong experienced panic attacks while riding as a passenger in an automobile, as well as other phobic responses to being in an automobile. Armstrong also experienced bouts of sadness and crying spells in response to references to the van driver and his family.

{¶ 9} In September of 2009, Dr. Jennifer J. Stoeckel, a licensed psychologist, diagnosed Armstrong's symptoms as post-traumatic stress disorder ("PTSD"). Armstrong amended his workers' compensation claim for his physical injuries to include his PTSD injury, which the Industrial Commission allowed.

{¶ 10} Jurgenson Co. appealed from the Industrial Commission's order to the court of common pleas. Prior to trial, Armstrong filed a motion in limine to prohibit any claim by Jurgenson Co. that a psychological injury is not compensable when it arises contemporaneous with a compensable physical injury or condition. [Dkt. 18]. The record does not indicate that the trial court ruled on the motion. The parties stipulated to the following facts:

{¶ 11} "1) Shaun Armstrong was involved in a motor vehicle accident during the course of his employment with John R. Jurgenson Co. on August 27, 2009, when his vehicle was struck from behind by an oncoming motorist.

{¶ 12} "2) As a result of the motor vehicle accident which occurred on August 27, 2009, Mr. Armstrong suffers from conditions which include a cervical sprain, thoracic sprain, lumbar sprain, lumbar sprain, left shoulder sprain and left posterior labral tear.

{¶ 13} "3) Mr. Armstrong suffers from post-traumatic stress disorder." [Dkt. 19].

{¶ 14} The case was tried to the court. In addition to Armstrong's testimony, the court heard the expert witness testimony of Armstrong's expert, Dr. Stoeckel, and Jurgenson Co.'s expert, Dr. William Howard, who is also a licensed psychologist, by video deposition. The experts agreed that Armstrong suffers from PTSD. The disagreement was in its origin.

{¶ 15} Dr. Stoeckel testified that, in her opinion, Armstrong suffers from PTSD as a result of the motor vehicle collision of August 27, 2009. She explained that PTSD requires a traumatic event, in this instance the accident that resulted in Armstrong's physical injuries, and therefore that Armstrong suffers from PTSD as a result of that work-related accident. Dr. Stoeckel opined that Armstrong's physical injuries "contributed to" (Tr. 19) his PTSD, and that his physical injuries "definitely . . . were causal factors" (Tr. 33) in Armstrong's development of PTSD.

{¶ 16} Dr. Howard testified that a diagnosis of PTSD "means . . . that you're exposed to a severe environmental stressor of some sort . . . (that) . . . creates an indelible effect on your mental state," adding:

{¶ 17} "And then what happens is, even in other activities, your mind has a videotape of this and keeps referring back to that event via nightmares, flashbacks, revivification experiences, et cetera, and then it can be associated with tendencies to avoid some of the circumstances surrounding the initial trauma or injury. Because that has a tendency to reactivate some of these flashbacks, nightmares and whatnot.

{¶ 18} "So, basically, it's this exposure to a severe trauma, and you keep reexperiencing this trauma in different situations afterwards for a period of time." (Tr. 10-11).

{¶ 19} After being asked for his opinion whether Armstrong's

PTSD arose out of his physical injuries, Dr. Howard testified:

{¶ 20} "Well, my opinion is that it was not actually caused by the physical conditions, the cervicothoracic lumbar problems. It was actually caused by being a visual witness of the incident. The trauma that caused the posttraumatic stress disorder would not be a strain injury or a physical injury. It would be the mental observation of the severity of the injury. The fatality, the fact that it could have been life-threatening to him at some point, that sort of thing.

{¶ 21} "Q. Then do you believe, within a reasonable degree of psychological certainty and probability, as to whether Mr. Armstrong's physical injuries had no impact on the proximate cause of his posttraumatic stress disorder?

{¶ 22} "A. Yes. That's – yeah, I guess that's what I was saying earlier, that the – even if he didn't have any injury, physical injury, I think he still would have a posttraumatic stress disorder because of, you know, the life-threatening nature of the incident, the fact that someone else died during the accident. It's all this – the experience of the injury or the incident, not the actual physical trauma." (Deposition Tr., pp. 20-21.)

{¶ 23} The trial court held that Armstrong's claim for PTSD was not allowed because _[i]n strictly construing the definition of injury under [R. C. 4123.01(C)] * * * plaintiff's PTSD did not *arise out of* his physical injuries._ [Dkt. 21].

{¶ 24} From the judgment of the trial court disallowing his claim for PTSD, Armstrong appeals.

ASSIGNMENT OF ERROR

{¶ 25} "THE TRIAL COURT ERRED WHEN IT FOUND THAT PSYCHOLOGICAL CONDITIONS SUFFERED CONTEMPORANEOUS TO RECOGNIZED PHYSICAL INJURIES ARE NOT COMPENSABLE UNDER THE OHIO WORKERS' COMPENSATION SYSTEM."

{¶ 26} Section 35, Article II of the Ohio Constitution authorizes the General Assembly to enact laws "[f]or the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment . . ."

{¶ 27} The Workers Compensation Act, R.C. Chapter 4123, was enacted to protect those who suffer injuries arising out of and in the course of their employment. *Ruddy v. Industrial Commission* (1950), 153 Ohio St. 475. The rights the Act confers are purely statutory, and because such statutory rights are not based on principles of the common law, they are limited to those conferred by statute. *Westenberger v. Industrial Commission* (1939), 135 Ohio St. 211.

{¶ 28} When exercising its constitutional power, the General Assembly may include all reasonable provisions that are necessary to make the law effective and to accomplish its stated purpose. *Fassig v. State* (1917), 95 Ohio St. 232. R.C. 4123.95 declares

that the law "shall be liberally construed in favor of employees and the dependents of deceased employees." However, the principle of liberal construction cannot be applied to permit an award of compensation in the case of an injury that clearly falls outside the comprehension of the statute. *Georgejakakis v. Wheeling Steel Corporation* (1949), 151 Ohio St. 458; *State ex rel. Jonak v. Beall* (1940), 136 Ohio St. 213.

{¶ 29} R.C. 4123.01(C) states:

{¶ 30} "'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include:

{¶ 31} "(1) Psychiatric conditions except where the claimant's psychiatric conditions have <u>arisen from an injury or occupational disease sustained by that claimant</u> or where the claimant's psychiatric conditions have arisen from sexual conduct in which the claimant was forced by threat of physical harm to engage or participate." (Emphasis supplied.)

{¶ 32} R.C. 4123.01(C) was amended by 2006 S 7. Prior to its amendment, that section defined an injury to exclude: "(1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease." The further limitation that the injury or disease must have been "sustained by that claimant" were added by 2006 S 7, apparently in response to the

holding in *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 2001-Ohio-236.

{¶ 33} In *Bailey*, an employee suffered debilitating depression as a result of an accident in which he killed a coworker. The Supreme Court held that a psychiatric condition arising from a compensable injury suffered by a third party was not precluded from the definition of an injury under the terms of R.C. 4123.01(C)(1). The General Assembly subsequently limited compensable psychiatric conditions suffered by a claimant to those which "have arisen from an injury or occupational disease sustained by that claimant" by enacting 2006 S 7, which became effective on June 30, 2006. The accident that occasioned Armstrong's PTSD occurred on August 27, 2009, and his claim is plainly controlled by the 2006 amendment.

{¶ 34} Armstrong, relying on case law decided prior to the enactment of 2006 S 7, argues that, to be compensable, a psychiatric condition need only be contemporaneous with a compensable physical injury. We do not agree.

{¶ 35} The required nexus between a compensable psychiatric condition and an injury sustained by the claimant that R.C. 4123.01(C)(1) imposes is that the psychiatric condition must have "arisen from" the injury. "From" is a preposition "used as a function word to indicate a starting point." Webster's Third New International Dictionary. To be compensable, a psychiatric

condition must have been started by and therefore result from a physical injury or occupational disease the claimant suffered. Conversely, "for purpose of R.C. Chapter 4123, psychiatric conditions that do not result from a physical injury do not constitute an 'injury.'" *Bunger v. Lawson Milk Company* (1998), 82 Ohio St.3d 463, 464.

{¶ 36} In *State ex rel. Clark v. Industrial Commission* (2001), 92 Ohio St.3d 455, the Supreme Court held that "a corrections officer who suffered a psychological injury as a result of being held hostage, but without a contemporaneous physical injury, is without a remedy, under the workers' compensation system." *Id.*, at 459.

{¶ 37} In *McCrone v. Bank One Corporation*, 107 Ohio St.3d 272, 2005-Ohio-6505, in which the claimant likewise suffered no physical injury at all, the Supreme Court held, at ¶29: "Psychological or psychiatric conditions, without an accompanying physical injury or occupational disease, are not compensable under R.C. 4123.01(C)(1)."

{¶ 38} The term "contemporaneous" connotes a temporal nexus, not a causative nexus. Two things are contemporaneous when they arise, exist, or occur at the same time. *State ex rel. Clark* used the term contemporaneous to illustrate the lack of any causative nexus, because in that case the claimant suffered no physical injury at all. Neither *State ex rel. Clark* nor *McCrone v. Banc One Corp.*,

hold that a psychiatric or psychological condition arises from a physical injury because the two coincide in time. Both cases hold that the condition must also be a product of a physical injury. As amended by 2006 S 7, R.C. 4123.01(C)(1) requires that, in addition, the physical injury must be one that the claimant suffered in order for the claimant's psychological injury to be compensable.

{¶ 39} The trial court correctly construed the exclusion from coverage for psychiatric conditions in R.C. 4123.01(C)(1). Further, there was competent, credible evidence from which the court could find that Armstrong's psychiatric condition did not arise from the physical injuries he suffered, but was instead the result of the horrific injuries that caused the death of the other driver when their vehicles collided. Dr. Howard testified that Armstrong's PTSD was not caused by his physical injuries from the accident but instead was "caused by being a visual witness of the" accident. He reviewed the available medical evidence and provided a sound basis for his conclusion. The court was free to reject the testimony of Dr. Stoeckel, which tended to support Armstrong's "contemporaneous event" theory. Therefore, the trial court's judgment is not against the manifest weight of the evidence and must be affirmed. *C.E. Morris Co. v. Foley Construction Company*.

{¶ 40} The assignment of error is overruled. The judgment of the trial court will be affirmed.

HALL, J., concurs.

FAIN, J., dissenting:

{¶ 41} I would find that Armstrong's post-traumatic stress syndrome is a compensable psychiatric condition under the Workers' Compensation Statutes, reverse the judgment of the trial court, and remand for further proceedings.

{¶ 42} R. C. 4123.01(C)(1) defines "injury," as used in workers' compensation laws. In relevant part, it reads:

{¶ 43} " 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include: (1) Psychiatric conditions except where the claimant's psychiatric conditions have arisen from an injury * * * sustained by that claimant * * * ._

{¶ 44} The primary goal in statutory interpretation is to give effect to the legislature's intent. *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 39, 2001-Ohio-236. In determining legislative intent, the court first looks to the statute's language. Id. The court must give effect to the words used in the statute, and not delete or insert words. Id. at 39-40. If the statute's meaning

is unambiguous and definite, it must be applied as written. Id. at 40.

{¶ 45} Neither party disputes that Armstrong suffered a compensable physical injury, that he suffered PTSD, or that his physical injuries at least contributed to his PTSD. The parties disagree about how to construe the language "arisen from an injury * * * sustained by that claimant * * * ._ Armstrong argues that the wording should be interpreted as requiring a claimant to show only that he suffered his psychiatric condition contemporaneously with his compensable physical injury. Jurgenson argues that the wording shows the legislature's intent to distinguish between those psychiatric conditions that arise from physical injuries and those that are reactions to the injurious event or to the injuries of other persons. Jurgenson argues that only the former would be compensable. Jurgenson asserts that, in line with the expert testimony, Armstrong's physical injuries only "contributed" to the development of the PTSD, making the relationship between Armstrong's injuries and his PTSD correlative, not causal.

{¶ 46} The statutory limitation restricts participation to a psychiatric condition that has "arisen from an injury"

sustained by the claimant. The term "injury" refers both to the hurt, damage, or loss sustained, and to the act that damages, harms, or hurts. Webster's Third New International Dictionary (G. & C. Merriam Company, Springfield, Massachusetts, 1969), 1164. "INJURY, HURT, DAMAGE, HARM, and MISCHIEF mean in common the act or result of inflicting on a person or thing something that causes loss, pain, distress, or impairment." Id.

{¶ 47} Read narrowly, the statutory restriction would require that the psychiatric condition must result from the harm caused by a physical injury. Read liberally, the statutory restriction would require only that the psychiatric condition must result from the act that causes a physical injury.

{¶ 48} I find *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, to be helpful. That case involved the constitutionality of the contemporaneous physical injury requirement for compensation for a psychological or psychiatric injury. Justice Lanziger wrote the majority opinion, holding that the requirement does not violate the equal protection clauses of the federal or Ohio constitutions; Justice Lundberg Stratton wrote a concurring opinion; and

Justice Resnick wrote the dissenting opinion, opining that the contemporaneous physical injury requirement does violate the equal protection clauses.

{¶ 49} Both the majority and dissenting opinions characterized, and discussed, the nature of the contemporaneous physical injury requirement. In the majority opinion, the "arisen from an injury or occupational disease" formulation in R.C. 4123.01(C) is used interchangeably with the requirement of a contemporaneous physical injury:

{¶ 50} "Psychological or psychiatric conditions, without an accompanying physical injury or occupational disease, are not compensable under R.C. 4123.01(C)." Id., ¶ 29.

{¶ 51} " * * * , even if we were to apply *Bailey* [*v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38], physical injury is still required * * * before a claimant's mental condition becomes compensable. In McCrone's case, there was no physical injury whatsoever." Id., ¶ 28.

{¶ 52} "The General Assembly has determined that those who have mental conditions along with compensable physical injury or occupational disease are covered within the workers' compensation system, * * * ." Id., ¶ 30.

{¶ 53} " * * * , the BWC argues that it is reasonable to classify psychological and psychiatric conditions differently from those accompanied by physical injury." Id., ¶ 33.

{¶ 54} "Although a physical injury may or may not cause a psychological or psychiatric condition, it may furnish some proof of a legitimate mental claim." Id.

{¶ 55} "We accept the appellant Bureau of Workers' Compensation's position and hold that R.C. 4123.01(C) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions by excluding from the definition of 'injury' psychological or psychiatric conditions that do not arise from a compensable physical injury or occupational disease." Id., ¶ 36.

{¶ 56} "Requiring that a mental disorder be incident to a physical injury * * * is rationally related to legitimate governmental interests." Id., ¶ 37.

{¶ 57} The dissenting opinion is even more instructive when it points out the minimal differences in circumstances that could result in one worker's mental condition being compensated, while another worker's mental condition is not:

{¶ 58} "And yet this same injury – posttraumatic stress disorder – would be fully covered under the statute if only the bank robber had been considerate enough of appellee's compensation position to have shoved her during the robbery so that she could stub her toe and acquire the physical element that is deemed so essential to her right of recovery." Id. ¶ 43.

{¶ 59} "Or consider the situation in which the bank robber fires a gun at the teller but narrowly misses. Can it really be concluded with any measure of rationality that there are reasonable grounds for making compensability of the teller's posttraumatic stress disorder turn on whether she had the 'good fortune' from a coverage standpoint to have twisted her back or sprained a finger upon recoiling at the prospect of being shot to death? Does the injured back or finger under these circumstances, or the stubbed toe in the previous scenario, really provide such independent verification of the posttraumatic stress disorder as to be rationally determinative of its compensability?" Id., ¶ 44.

{¶ 60} Nowhere in the majority opinion in *McCrone* is there a disclaimer of the compensation hypothesized for the hypothetical situations set forth in the dissenting opinion.

Both the majority and dissenting opinions in *McCrone* treat the physical injury requirement as merely requiring that a physical injury must accompany the psychological or psychiatric injury for which workers' compensation is sought – that is, that the psychological or psychiatric injury must result from the act (the "injury") that caused physical harm.

{¶ 61} I do not conclude that *Bunger v. Lawson Milk Company* (1998), 82 Ohio St.3d 463, requires more than that a physical injury must accompany the psychological or psychiatric injury for which workers' compensation is sought. To begin with, the facts in that case did not involve any physical injury at all. Furthermore, Justice Lundberg-Stratton, whose concurring opinion was necessary to the majority (only two other justices concurred in Justice Pfeifer's opinion for the court), clearly deemed the requirement to be merely that a physical injury must accompany the psychological or psychiatric injury:

{¶ 62} " * * * , psychological injuries without accompanying physical injury are specifically excluded from compensable injuries under the workers' compensation statutes."

{¶ 63} " * * * , when the employee sustains a psychological injury in the workplace without a physical injury, the employee is prevented from seeking recovery for the injury because it is not covered under the workers' compensation system."

{¶ 64} "A psychological injury may exist without a concurrent physical injury. It is time that such a psychological injury be recognized as compensable in the workers' compensation system. [Recognizing, however, that the law was presently otherwise.]" *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 467.

{¶ 65} The workers' compensation statutes "shall be liberally construed in favor of employees." R. C. 4123.95.

{¶ 66} Liberal construction means giving "generously all that the statute authorizes," and "adopting the most comprehensive meaning of the statutory terms * * * to accomplish the aims of the Act and to advance its purpose, with all reasonable doubts resolved in favor of the applicability of the statute to the particular case. Interpretation and construction should not result in a decision so technical or narrow as to defeat the compensatory objective of the Act." *Bailey v. Republic Engineered Steels,*

*Inc.*, 91 Ohio St.3d at 40, quoting Fulton, Ohio Workers' Compensation Law (2 Ed.1998) 9, Section 1.7.

**{¶ 67}** I conclude that a liberal construction of R.C. 4123.01(C) would require us to hold that a psychological or psychiatric condition is compensable if it otherwise meets the requirements for participation in the workers' compensation system and is contemporaneous with a compensable physical injury. This construction of the statute is at least suggested by, if not commanded by, both the majority and dissenting opinions in *McCrone v. Bank One Corporation*, 107 Ohio St.3d 272, 2005-Ohio-6505. But see *Dunn v. Mayfield* (1990), 66 Ohio App.3d 336, a decision pre-dating *McCrone*, which suggests otherwise.[1]

. . . . . . . . .

**Copies mailed to:**

**Jeffrey W. Harris, Esq.**
**Corey V. Crognale, Esq.**
**Colleen Erdman, Esq.**
**Hon. Douglas M. Rastatter**

---

[1] **"While appellant faces the unenviable task of establishing that his post-traumatic stress disorder was proximately caused by his cut fingers, burning eyes and lungs and not the emotional stress he describes as being the causative factor in his psychiatric examination by Dr. Brown, he has stated a cause of action."  66 Ohio App.3d 342.**