[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 455.]

THE STATE EX REL. CLARK, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO; SOUTHERN OHIO CORRECTIONAL FACILITY, OHIO DEPARTMENT OF REHABILITATION & CORRECTION, APPELLANT.

[Cite as *State ex rel. Clark v. Indus. Comm.*, 2001-Ohio-1265.]

*Workers' compensation—R.C. 4123.56(A) does not require a setoff of temporary total disability benefits where hostage leave has been paid pursuant to the terms of a collective bargaining agreement.*

(No. 99-2022—Submitted February 27, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-1178.

————————————

SYLLABUS OF THE COURT

R.C. 4123.56(A) does not require a setoff of TTD benefits where hostage leave has been paid pursuant to the terms of a collective bargaining agreement.

————————————

DOUGLAS, J.

{¶ 1} In April 1993, Darrold R. Clark, Jr., appellee, worked as a corrections officer for the Southern Ohio Correctional Facility. On April 11, 1993, inmates rioted at the correctional facility and took Clark hostage. While being held captive, Clark was beaten by the prisoners and sustained multiple physical injuries, including abrasions on his wrists, an open laceration on his upper forearm, an abrasion on his face, dehydration, and malnutrition. In addition to his physical injuries, Clark suffered severe stress and anxiety as a direct result of being held hostage as well as having been beaten. The inmates released Clark on April 15, 1993.

{¶ 2} Subsequent to his release, Clark submitted a claim to the Ohio Department of Rehabilitation and Correction for hostage leave pay pursuant to

Article 34.05 of the collective bargaining agreement between the state of Ohio and the Ohio Civil Service Employees Association. Clark's request was granted, and, pursuant to the collective bargaining agreement, he received hostage leave payable at his regular rate beginning April 18, 1993, and continuing through July 10, 1993.

{¶ 3} On April 28, 1993, Clark filed a claim with the Ohio Bureau of Workers' Compensation ("BWC") seeking temporary total disability ("TTD") compensation for the injuries he sustained while he was held hostage. The BWC first allowed his claim for "dehydration; malnourishment; abrasions bilateral wrists and face; laceration right upper arm; [and] atrial fibrillation." The bureau later allowed the additional condition of "post-traumatic stress disorder." On July 11, 1993, Clark began receiving TTD benefits.

{¶ 4} On October 26, 1993, Clark filed a claim with BWC requesting TTD benefits for the period from April 12, 1993, through July 10, 1993, *i.e.,* approximately the same period for which he had received hostage leave benefits. This claim for TTD benefits was denied. Clark appealed the denial to a BWC district hearing officer ("DHO"). The DHO denied the appeal and found that TTD compensation was not payable, reasoning that if TTD were permitted for the same period as hostage leave, hostage leave would have to be deducted from TTD benefits, resulting in no payment. Clark appealed the DHO decision, and a hearing was held before a BWC staff hearing officer ("SHO"), who affirmed the DHO decision. The SHO found that hostage leave payment was the equivalent of wages. Notwithstanding that finding, the SHO ordered TTD to be paid for April 11, 1993, through July 15, 1993, but also ordered the hostage leave pay to be deducted from the award of TTD.[1]

---

1. The SHO affirmed the DHO decision denying Clark's claim. However, in contrast to the DHO decision, the SHO ordered that "temporary total compensation is payable from 4/11/93 through 7/15/93 per the C-30 report from Dr. Gilman, less wages (or in this case, Hostage Leave) previously paid over such period."

{¶ 5} Clark appealed the decision to the Industrial Commission. The commission denied Clark's claim on the basis that hostage leave compensation constituted one hundred percent wage replacement and that R.C. 4123.56(A) prevents TTD payments when a claimant has not lost any wages.

{¶ 6} Clark filed an action in mandamus in the Tenth District Court of Appeals, claiming that he was entitled to TTD benefits payable over the same period that he received hostage leave. Clark sought a determination that the denial of his claim was an abuse of discretion.

{¶ 7} Pursuant to Civ.R. 53[2] and Loc.R. 12(M) of the Franklin County Court of Appeals, the matter was referred to a magistrate. The court magistrate found that the Industrial Commission had not abused its discretion and recommended that the court deny the writ.

{¶ 8} Clark filed objections to the magistrate's recommendation. The court of appeals adopted the magistrate's findings of fact but rejected the magistrate's conclusions of law. The court of appeals found that the commission abused its discretion when the commission determined that the payment of hostage leave constituted a wage as opposed to a benefit paid pursuant to the collective bargaining agreement. Accordingly, the court of appeals issued a writ of mandamus ordering the commission to vacate its order denying Clark's application for TTD for the period of April 12, 1993, through July 10, 1993, and to enter an order granting that compensation, with no setoff for hostage leave pay.

{¶ 9} The case is now before this court upon an appeal as of right.

{¶ 10} The Workers' Compensation Act provides for compensation to be paid to workers injured in the course of their employment. R.C. 4123.54. Every employee who is injured, who contracts an occupational disease, or who dies while

---

2. Civ.R. 53(A) provides that "[a] court of record may appoint one or more magistrates who shall be attorneys at law admitted to practice in Ohio." Civ.R. 53(C) sets out the powers of magistrates. It provides that a magistrate may hear an issue in any nonjury trial or in any case in which the parties consent in writing to submit an issue to a magistrate. Civ.R. 53(C)(1)(ii) and (iii).

in the course of employment is "entitled to receive, either directly from the employee's self-insuring employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, the compensation for loss sustained on account of the injury" provided by R.C. Chapter 4123.  R.C. 4123.54(A)(2).

{¶ 11} Injury, for the purposes of the Workers' Compensation Act, is defined in R.C. 4123.01(C) and "includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."

{¶ 12} R.C. 4123.56 provides compensation for workers who suffer injuries that result in temporary disability.  The purpose behind TTD compensation is to compensate an employee for a loss of earnings while recovering from an injury. *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535.

{¶ 13} Relevant to this appeal, R.C. 4123.56(A) provides:

"If any compensation under this section has been paid for the same period or periods for which temporary nonoccupational accident and sickness insurance is or has been paid pursuant to an insurance policy or program to which the employer has made the entire contribution or payment for providing insurance or under a nonoccupational accident and sickness program fully funded by the employer, compensation paid under this section for the period or periods shall be paid only to the extent by which the payment or payments exceeds the amount of the nonoccupational insurance or program paid or payable."

{¶ 14} The Southern Ohio Correctional Facility, Ohio Department of Rehabilitation and Correction, appellant, argues that R.C. 4123.56(A) precludes payment of any TTD compensation where an injured worker has been paid benefits through a program fully funded by the employer.  Thus, appellant contends that, pursuant to R.C. 4123.56(A), TTD compensation should be offset by the hostage

leave pay that Clark received, since hostage leave is a nonoccupational benefit program fully funded by Clark's employer. We disagree.

{¶ 15} Article 34.05 of the collective bargaining agreement provides:

"In the Department of Rehabilitation and Correction, the Department of Youth Services, and the Forensic Centers within the Department of Mental Health, any employee who has been taken hostage shall be eligible for up to sixty (60) days leave with pay at regular rate which shall not be charged to sick leave, vacation, or any other accrued leave, as determined necessary by a licensed physician or psychiatrist to recover from stress."

{¶ 16} R.C. 4123.56(A) requires setoff of any payments received by the claimant from an employer-funded "nonoccupational accident and sickness" insurance or program against temporary total disability compensation paid for the same period. We find that the hostage leave payments received by Clark pursuant to the collective bargaining agreement are not "nonoccupational," and that therefore setoff is not required.

{¶ 17} The hostage leave pay provided to corrections officers under the collective bargaining agreement is a benefit that arises from the peculiar hazards associated with prison work. Corrections officers are in daily intimate contact with convicted criminals, some of whom have violent propensities. The emotional and physical pressures of extended incarceration can erupt into violence, rioting, and prison takeovers, as in this case, which often involve hostage-taking of prison employees. This is a risk that corrections officers face every day on the job. In consideration of that risk, the employer in this case has offered a benefit designed to compensate those of its employees who actually suffer the trauma of being taken hostage in the course of their employment. Thus, this benefit is designed to address a risk that is occupational, *i.e.*, one that is clearly connected to the nature of the work. As such, it is not a "nonoccupational accident and sickness" program, and it is not within the purview of R.C. 4123.56(A).

**{¶ 18}** Furthermore, Clark argues that hostage leave, pursuant to the collective bargaining agreement, is a contractual fringe benefit. As such, hostage leave falls outside the Worker's Compensation Act, and, therefore, hostage leave payments may not be used as a basis to offset TTD benefits.

**{¶ 19}** Pursuant to the collective bargaining agreement, Clark was entitled to take sixty days of paid leave, if deemed necessary by a physician, in order to recover from the stress associated with being held hostage. In order to qualify for hostage leave, Clark was not required to have suffered any physical injury; he was required to show only that he suffered from stress associated with being held hostage. Thus, according to the terms of the collective bargaining agreement, hostage leave is payable with or without any contemporaneous physical injury.

**{¶ 20}** Moreover, for the purposes of R.C. 4123.54, "injury" does not include psychiatric conditions "*except* where the conditions have arisen from an injury or occupational disease." (Emphasis added.) R.C. 4123.01(C)(1). A psychological injury without a corresponding physical injury is not compensable under the workers' compensation system. *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 464, 696 N.E.2d 1029, 1031.[3] Therefore, a corrections officer who suffers a psychological injury as a result of being held hostage, but without a contemporaneous physical injury, is without a remedy under the workers' compensation system.

**{¶ 21}** In *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428, we held that the workers' compensation statutes do not provide the exclusive remedy for claims based upon sexual harassment in the workplace. *Id.* at paragraph one of the syllabus. We recognized in *Kerans* that workers' compensation is essentially directed at compensating a worker for lost earnings and thus does not provide benefits for sexual harassment, since victims of sexual harassment

---

3. The author of this opinion continues to adhere to his dissent in *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 468, 696 N.E.2d 1029, 1033.

generally do not suffer loss of wages. *Id*. We also noted that the immunity provisions of R.C. 4123.74 did not bar the plaintiff's suit because her sexual harassment claims fell outside the purview of the workers' compensation system. *Id.* at 489-490, 575 N.E.2d at 431. Thus, we held that a damage award as a result of a sexual harassment lawsuit is a means of compensating a worker for an injury that is incurred during the course of employment but is not compensable under workers' compensation.

{¶ 22} Similarly, hostage leave pay provides a remedy to workers who suffer a psychological injury as a result of being held hostage that is not otherwise compensable under workers' compensation. In other words, hostage leave can provide a separate remedy, outside the workers' compensation system, for a worker who has suffered psychological injury without suffering a contemporaneous physical injury. As such, hostage leave is very similar to the damage award in *Kerans*. Therefore, we find that hostage leave pay, as provided in the collective bargaining agreement, is not intended to be the type of wage-replacing benefit contemplated in R.C. 4123.56(A).

{¶ 23} Clark also argues that any offset of TTD by hostage leave payments received deprives him of the benefit of the bargain negotiated through the terms of the collective bargaining agreement between Clark's union and the state. We agree.

{¶ 24} In *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504, the plaintiff, Sorrell, prevailed in a personal injury claim against defendant, Thevenir. Thevenir claimed that because Sorrell had received workers' compensation benefits in excess of the personal injury verdict, Thevenir was entitled, pursuant to R.C. 2317.45(B)(2), to a setoff of the entire damage award. We held that the collateral source statute, R.C. 2317.45, by requiring the offset of collateral benefits, including workers' compensation benefits, violated Sections 2, 5, and 16, Article I of the Ohio Constitution and accordingly was unconstitutional *in toto*. *Id.* at syllabus.

**{¶ 25}** We found persuasive in *Sorrell* the contention that there is no double recovery from a tortfeasor in the typical tort case involving collateral benefits, since one of the supposed double recoveries is actually the benefit of the plaintiff's bargain with his or her own insurance company. In *Sorrell*, we found that the benefit of the bargain was the employer-paid workers' compensation and disability compensation programs that were earned by the employees as an employment benefit. *Id.,* 69 Ohio St.3d at 424, 633 N.E.2d at 511-512.

**{¶ 26}** Similarly, hostage leave is a bargained-for benefit of Clark's collective bargaining agreement. In this case, Clark's union and the state negotiated in good faith and have agreed to a presumably mutually beneficial collective bargaining agreement. If we were to deny TTD benefits to Clark based upon his receipt of hostage leave pay, we would circumvent the negotiated provision of the collective bargaining agreement that entitles Clark to hostage leave.

**{¶ 27}** Moreover, and in any event, we find that the language of the collective bargaining agreement suggests that hostage leave pay is not intended to require an offset of TTD benefits. The provision of the collective bargaining agreement immediately preceding the section providing for hostage leave is Article 34.04, entitled "Occupational Injury Leave." Article 34.04 provides:

"Employees of * * * The Department of Rehabilitation and Correctio[n] * * * shall be entitled to a total of nine hundred sixty (960) hours of occupational injury leave a year with pay at regular rate. (See Appendix K)."

**{¶ 28}** Appendix K of the collective bargaining agreement, entitled "Guidelines for Occupational Injury Leave," provides:

"1. An employee of the * * * Department of Rehabilitation and Correction * * * shall be eligible for his/her regular rate of pay during the period he/she is disabled as a result of such injury but in no case to exceed 960 hours. This form of compensation *shall be in lieu of Workers' Compensation*." (Emphasis added.)

{¶ 29} Article 34.04 specifically states that occupational injury benefits are paid in lieu of workers' compensation pursuant to Appendix K of the agreement. However, there is no provision stating that hostage leave, payable pursuant to Article 34.05, is to be paid in lieu of workers' compensation benefits. Since occupational injury leave is subject to the provisions of Appendix K of the collective bargaining agreement, and hostage leave is not subject to those provisions, we conclude that the parties to the collective bargaining agreement had no intention that hostage leave is to be paid in lieu of TTD benefits or any other workers' compensation benefits.

{¶ 30} Accordingly, we hold that hostage leave is not a "nonoccupational accident and sickness" program, and it is not within the purview of R.C. 4123.56(A). In addition, pursuant to the terms of the collective bargaining agreement between the state of Ohio and the OCSEA, hostage leave is a benefit independent of the Workers' Compensation Act and is provided to employees of the Department of Rehabilitation and Correction for the unique risks of psychological injury associated with their employment as corrections officers. For the foregoing reasons, we therefore find that R.C. 4123.56(A) does not require a setoff of TTD benefits where hostage leave has been paid pursuant to the collective bargaining agreement.

{¶ 31} Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 32} The majority holds that R.C. 4123.56(A) does not require a setoff of TTD benefits where hostage leave has been paid pursuant to the terms of a

collective bargaining agreement ("CBA"). For the following reasons, however, I disagree.

{¶ 33} As the majority notes, "[t]he purpose behind TTD compensation is to compensate an employee for a loss of earnings while recovering from an injury. State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535." (Emphasis added.) I agree with this statement of purpose, and that is precisely why I must respectfully dissent. Clark's receipt of hostage leave under Article 34.05 of the CBA compensated him at the regular rate of pay, with leave that was not charged to him. He thus suffered no "loss of earnings" attributable to the period during which he recovered.

{¶ 34} I agree with the appellate court magistrate's conclusion that the term "nonoccupational," construed in the context of R.C. 4123.56(A)'s setoff provisions, refers to wage-replacing compensation paid for temporary disability by sources collateral to the workers' compensation system. The magistrate's interpretation is buttressed by the administrative interpretation of the relevant statutory provisions—an interpretation to which we should accord appropriate deference. See Swallow v. Indus. Comm. (1988), 36 Ohio St.3d 55, 57, 521 N.E.2d 778, 779. Though notably absent from the majority's discussion, Ohio Adm.Code 4123-5-20(C) provides:

"Where claimants are paid a regular salary during the period of disability on any * * * basis [other than vacation], for example, sick leave, [TTD] cannot be paid so long as such regular salary or wages are paid, unless * * * such salary was paid as an advancement."[4] (Emphasis added.)

{¶ 35} It is undisputed that Clark was paid his regular salary during his period of disability and that it was not paid as an advancement.

---

4. See, also, Memo Nos. C1 and C2 of the Industrial Commission of Ohio Policy Statements and Guidelines (Jan. 1, 1989), which implement this directive.

**{¶ 36}** The majority relies heavily on the fact that the CBA article immediately preceding the article providing hostage leave expressly provides that such leave is "in lieu of Workers' Compensation"—whereas the article providing hostage leave does not. But the preceding article to which the majority refers is entitled "Occupational Injury Leave." (Emphasis added.) The fact that hostage leave does not appear in the CBA article entitled "Occupational Injury Leave" actually undercuts the majority's thesis by demonstrating that the parties to the CBA, like the magistrate and the commission, deemed hostage leave nonoccupational—and thus subject to setoff under R.C. 4123.56(A).

**{¶ 37}** An award of TTD benefits to Clark in this case does not correspond to the overall purpose of R.C. 4123.54 and 4123.56(A) to compensate employees for TTD only to the extent that they have not been compensated for their lost wages by their employers. The commission did not abuse its discretion when it determined that the TTD Clark received should be set off by the hostage leave compensation that he received. I would reverse the appellate court's decision to the contrary.

————————————

*Phillip J. Fulton & Associates* and *William A. Thorman III*, for appellee.

*Betty D. Montgomery,* Attorney General, *Karla L. Stultz,* Assistant Attorney General, and *Lee M. Smith,* Special Counsel, for appellant.

————————————