[Cite as *Jones v. Catholic Healthcare Partners, Inc.*, 2012-Ohio-6269.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CHRISTINE M. JONES | ) | CASE NO. 11 MA 23 |
| | ) | |
| APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CATHOLIC HEALTHCARE | ) | |
| PARTNERS, INC., et al. | ) | |
| | ) | |
| APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
                             Pleas of Mahoning County, Ohio
                             Case No. 07CV4679

JUDGMENT:                    Affirmed.

APPEARANCES:

For Appellee:                Atty. Patrick E. Parry
                             434 High Street
                             P.O. Box 792
                             Warren, Ohio  44482

For Appellant:               Atty. Thomas R. Wyatt
                             Atty. Jerry P. Cline
                             Andrews & Wyatt, LLC
                             561 Boston Bills Road, Suite 700
                             Hudson, Ohio  44236

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                             Dated:  December 31, 2012

WAITE, P.J.

**{¶1}** Appellant, Catholic Healthcare Partners, Inc., appeals the trial court's decision to grant summary judgment in favor of Appellee, Christine M. Jones. The trial court's judgment upheld a bureau of workers' compensation decision to allow benefits for physical injuries and posttraumatic stress disorder ("PTSD") resulting from a hostage incident. Appellant does not dispute Appellee's right to recovery for the physical injury. However, Appellant argues that the award for PTSD was inappropriate. Appellant contends that there was insufficient evidence that Appellee's PTSD was a covered condition under applicable law, and that the trial court should not have granted summary judgment affirming the bureau award and compensation. Appellant's argument is without merit and is overruled.

Factual and Procedural History

**{¶2}** Appellee's initial application for workers' compensation was based on the events of April 4, 2007. On that date, Appellee was employed at St. Elizabeth Medical Center in Youngstown, Ohio and working as a unit clerk and monitor technician. She and five others were taken hostage by an inmate who had been transported to the hospital for treatment. The group was held for approximately twenty-five minutes by the inmate, who then escaped. Appellee described portions of the incident to her evaluating physician as follows:

He took a gun from a guard * * * the inmate "grabbed my left wrist. I yanked away from him. Then he grabbed my right wrist, and pulled it and banged it against a doorway and pressed it there—holding me.

That's when he brought the gun up and said, 'I'll f*****g kill both of you.'
* * * 'I kept telling him to calm down.  He kept saying over and over that he would kill us—at least 15 times.  He said he wouldn't kill us if we did what he said until his brother got there.  I told Francine (other hostage) that I wouldn't let him hurt her.' "

(3/28/08 Heltzel Depo., Exh. A, p. 2.)   The examining physician noted that she described interacting extensively with the hostage-taker, including having been forced to assist him when he changed into the guard's uniform, and that she was later able to alert hospital security.  (3/28/08 Heltzel Depo., Exh. A, p. 2.)  Although the hostage-taker escaped, he was subsequently apprehended in another state.  Appellee's wrist injury had not been fully diagnosed when she originally met with Dr. Heltzel, and the physician referred to the injury in his initial report but stated that at that time an assessment of the psychological aspect of her physical injury would be deferred.  (3/28/08 Heltzel Depo., Exh. A, p. 3.)  Dr. Heltzel later explained during two depositions that the assault and resulting physical injury to Appellee's wrist as well as the continuing close physical proximity of the hostage-taker were contributing and perhaps aggravating factors in her resulting PTSD.

{¶3}   Appellee filed a workers' compensation claim for the wrist injury and for PTSD resulting from the same incident.  Initially, Appellee's compensation claim for PTSD was denied by the bureau of workers' compensation.  Compensation was allowed for the physical injury to her wrist.  Although the parties did not include the bureau file in the record on appeal, they appear to agree as to the proceedings below

and the actions taken by various levels within the bureau. According to Appellant's notice of appeal, filed December 14, 2007, and Appellee's "Complaint (Petition for Workers' Compensation benefits)" filed December 31, 2007, Appellee appealed the initial denial of benefits for her PTSD. According to the same documents, Appellee's administrative appeal of the denial of compensation was heard by a hearing officer on September 17, 2007 and the denial of coverage was reversed. After the September 2007, hearing, Appellee was awarded compensation for her PTSD by the bureau.

{¶4} Appellant challenged the compensation award by filing an administrative appeal of the hearing officer's decision with the Industrial Commission of Ohio. The commission refused to hear Appellant's appeal. Apparently after exhausting the administrative remedies, Appellant appealed both the decision allowing compensation for Appellee's PTSD and the denial of an administrative appeal of the award to the common pleas court. Although Appellant identified both the award of compensation for PTSD and the denial of review by the commission as the grounds for review in the trial court, subsequent trial proceedings dealt only with whether PTSD was a covered condition. In the proceedings before the trial court there was no dispute between the parties concerning the factual events that caused the wrist fracture and PTSD.

{¶5} When asked by counsel for Appellant whether the hostage incident alone, rather than in combination with the assault and physical injury to Appellee's wrist, was the cause of her PTSD during the March 28, 2008 deposition, Dr. Heltzel

explained "--he grabbed her. She was hurt. I think that does become an additional factor." (3/28/08 Heltzel Depo., p. 16.) The doctor concluded:

> Again, I have to be very careful, because the fact that he grabbed her, I mean, that does contribute to trauma, if you can imagine.

> It's not like he was well across the room threatening her. He was in close contact with her and he physically grabbed her. I think that that aspect of it, you know, is a part of it for her and I just don't believe that the wrist injury per se can explain the Post-Traumatic Stress Disorder.

(3/28/08 Heltzel Depo., p. 23.) According to the doctor's testimony during the deposition, the anxiety and constant state of hyper-vigilance Appellee was experiencing due to her disorder was interfering with her interpersonal communication, her ability to concentrate and sustain focus, and the resulting level of suffering and distress prevented her from working. (3/28/08 Heltzel Depo., p. 23.)

{¶6} Dr. Heltzel was deposed for a second time by Appellant on August 9, 2010. During that deposition, unlike the March 28, 2008 deposition, the doctor was questioned by both counsel for Appellee and for Appellant. During the second deposition, the doctor further explained the steps he took in diagnosing Appellee's PTSD, and responded to additional questions concerning the definition of PTSD and the role of physical injury in the development of the disorder. Dr. Heltzel summarized the definition of the disorder as follows:

> I'll need to scan my -- the definition because it's quite lengthy. The essential aspect of post-traumatic stress disorder is an experience of an

event that involves actual or threatened death or serious injury or other threat to one's physical integrity; so that the concept of the physical injury is incorporated into that initial definition.

Further on the definition states that the disorder may be especially severe and long-lasting when the stresser [sic] is of human design, such as torture or rape. The likelihood of developing this disorder may increase as the intensity of the physical proximity to the stresser [sic] increase.

(8/9/10 Heltzel Depo., p. 15.) Dr. Heltzel expressed his opinion that the proximity of the stressor to the victim was a significant factor in the trauma, and explained that the primary causes of the disorder are the perception of danger to one's well-being coupled wit the possibility of death. The doctor emphasized that there is not a single trigger and what is referred to as the "traumatic event" is not a single moment, but may "encompass many different facets." (8/9/10 Heltzel Depo., pp. 16-17.) He explained that "the direct threat with a weapon and the verbal threat by the inmate, as well as the physical assault on Ms. Jones, which conveys a dominance over a person, increase the sense of helplessness" and that these aspects contributed to Appellee's disorder. (8/9/10 Heltzel Depo., p. 17.) Dr. Heltzel concluded by saying that the physical attack and fracture of Appellee's wrist, which occurred during the hostage incident, were "a definite contributing factor as one important feature of an overall traumatic event" resulting in a clinical diagnosis of post-traumatic stress disorder. (8/9/10 Heltzel Depo., p. 20.)

**{¶7}** The depositions of Dr. Heltzel, and his report, diagnosis and conclusions concerning Appellee's condition are the only medical evidence in the record. No alternate expert or contradictory evidence has been offered by Appellant. After the initial deposition, but before the second, Appellant sought summary judgment. Appellant argued that the testimony of Dr. Heltzel failed to establish that the allowable injury to Appellee's wrist was the sole proximate cause of her PTSD. Appellant argued that absent direct causation, PTSD is not a covered injury. Appellant's motion was initially denied, although the decision was vacated by the court to allow Appellant to file objections to the magistrate's decision. After considering Appellant's objections, on March 5, 2009 the trial court issued a final decision denying the motion. The initial magistrate's decision and subsequent trial court decision adopting it noted that "[w]hen multiple factors contribute to produce injury or illness, each is proximate cause." (12/31/08 J.E.) The trial court concluded that Appellant had failed to demonstrate that Appellee's "physical injury sustained in the assault was not the proximate cause of her psychiatric condition." (3/5/09 J.E.)

**{¶8}** The matter was unsuccessfully referred to mediation. Various subsequent filings continued through 2009 and into 2010, when Dr. Heltzel was deposed for a second time and trial was scheduled. Although three notices of deposition indicate Appellant's intent to depose Appellee and one indicates an intent by Appellant to depose her husband, no transcript of deposition of Appellee or her husband appears in the record. On August 6, 2010, Appellee sought leave to file a motion for summary judgment. Leave was granted and the motion was ultimately

filed instanter on November 29, 2010. What appears to be a complete transcript of the August 9, 2010 deposition of Dr. Heltzel is attached to Appellee's motion for summary judgment as Exhibit B. Appellee cites to and incorporates by reference the transcript of the deposition in the motion for summary judgment, however, no separate complete copy was filed, and no notice of filing of deposition is entered in the record with regard to the August 9, 2010 deposition. Appellant did not object to the form or use of the deposition transcript in support of Appellee's summary judgment motion, and in fact, also cites to portions of this deposition in a January 5, 2011 motion in opposition to Appellee's motion for summary judgment.

**{¶9}** The trial court granted Appellee's motion for summary judgment on January 14, 2011. The trial court referred to Dr. Heltzel's testimony in the August 9, 2010 deposition and noted that "Dr. Heltzel consistently testified during both depositions that the physical injury was a cause of Ms. Jones'[sic] PTSD, albeit not the sole cause." (1/14/11 J.E., p. 1.) The trial court concluded that under the applicable law, because it was undisputed that Appellee suffered both a covered physical injury and PTSD resulting from events that occurred during the course of her employment, Appellee's PTSD "arose from and was accompanied by the allowed injury." (1/14/11 J.E., p. 3.) The court ordered that Appellee was to participate in the workers' compensation fund "by reason of the injury and condition post traumatic stress disorder." (1/14/11 J.E., p. 3.) Appellant filed a timely appeal from this judgment.

<u>Argument and Law</u>

ASSIGNMENT OF ERROR

The trial court erred as a matter of law in finding that there is no genuine issue of material fact to be litigated and Plaintiff is entitled to summary judgment as a matter of law.

**{¶10}** Although Appellant mentions both the trial court's decision to grant summary judgment in favor of Appellee and the commission's decision not to hear an appeal of the bureau hearing officer's decision, the appellate brief focuses solely on the decision to grant summary judgment. No record of proceedings in the bureau or before the commission was included in the record on appeal. For these reasons, the only issue before us is whether the trial court properly granted summary judgment in favor of Appellee. Appellant posits that Appellee should be required to show that a compensable physical injury was the sole cause of her PTSD before she can receive compensation for her condition. The trial court, however, applied the same proximate cause standard generally applied in tort and adopted by the Supreme Court for use in workers' compensation cases in *Murphy v. Carrollton Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

**{¶11}** Under Civ.R. 56(C), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). The party seeking summary judgment "bears the initial burden of *demonstrating* that there are no genuine issues of material

fact concerning an essential element of the opponent's case." (Emphasis sic.) *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). "[S]ummary judgment shall not be rendered unless it appears from the evidence or stipulation * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response * * * must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). A reviewing court has a "complete and independent power of review as to all questions of law." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). A trial court's decision to grant summary judgment is a question of law and we review this discretion de novo. *Id.*

{¶12} On appeal, Appellant challenges the trial court's decision characterizing Dr. Heltzel's testimony as consistent. Appellant rejects the court's acceptance of the doctor's statement that the injury to Appellee's wrist was "a cause," "albeit not the sole cause" was sufficient to support the conclusion that Appellee is entitled to compensation for PTSD under R.C. 4123.01 as a matter of law. Appellant urges us to adopt an interpretation of R.C. 4123.01 that would limit recovery for psychiatric conditions arising out of employment, where occupational disease is not a factor, to situations where a claimant can identify a physical injury as the sole cause of the

psychiatric disorder. Adoption of the interpretation advocated by Appellant would result in denial of Appellee's compensation for PTSD awarded by the bureau's hearing officer. Appellant's interpretation of this section would similarly bar any claimant seeking compensation for PTSD after a hostage-taking or other traumatic incident, regardless of whether a compensable physical harm was concurrently suffered by the claimant.

{¶13} When considering "the issue of proximate cause in the workers' compensation context, * * * the definition of and principles governing * * * the determination of 'proximate cause' in the field of torts are applicable." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 587, 575 N.E.2d 828 (1991) citing *Oswald v. Connor*, 16 Ohio St.3d 38, 42 476 N.E.2d 658 (1985). "It is a well-established principle of tort law that an injury may have more than one proximate cause." *Murphy* at 587. In "Ohio, when two factors combine to produce damage or illness, each is a proximate cause." *Id.* at 588 quoting *Norris v. Babcock & Wilcox Co.*, 48 Ohio App.3d 66, 67, 548 N.E.2d 304, 305 (1988).

{¶14} The language of R.C. 4123.01 in effect at the time of Appellee's original claim provides:

(C) "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. "Injury" does not include:

(1) Psychiatric conditions except where the claimant's psychiatric conditions have arisen from an injury or occupational disease sustained by that claimant or where the claimant's psychiatric conditions have arisen from sexual conduct in which the claimant was forced by threat of physical harm to engage or participate;

When applying the definitions of R.C. 4123.01 to a specific claim, the legislature has also charged that the provisions "shall be liberally construed in favor of employees and the dependents of deceased employees." R.C. 4123.95.

{¶15} The definition of injury pursuant to R.C. 4123.01(C) was last altered in 1986 when the limiting language concerning psychiatric conditions was introduced. Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718. Prior to the 1986 amendment, injury was defined broadly: " 'Injury' includes any injury, *whether caused by external accidental means or accidental in character and result*, received in the course of, and arising out of, the injured employee's employment." (Emphasis sic.) Am.Sub.H.B. No. 470, 128 Ohio Laws 743, 745, effective November 2, 1959 as quoted in *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 275, 2005-Ohio-6505, 839 N.E.2d 1, ¶12. The exception to the definition of injury found in R.C. 4123.01(C)(1), which denies recovery for psychiatric conditions except in limited circumstances, was altered twice in 2006. (Alterations effective June 30, 2006). The first 2006 amendment to R.C. 4123.01(C)(1) limits compensation for psychiatric conditions arising from an injury to those instances in which both the injury and psychiatric condition are suffered by the same person. This amendment was intended to correct the outcome reached in

*Bailey v. Republic Engineered Steels, Inc.*, 5th Dist. No. 1999CA00084, 1999 WL 1072194 (November 1, 1999), *affirmed* by *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 741 N.E.2d 121 (2001), in which compensation was allowed in an employee's claim for "severe depression" resulting from witnessing the death of another employee in an industrial accident that the claimant unintentionally caused. (*Id.* at *1.)

**{¶16}** The second 2006 amendment to R.C. 4123.01(C)(1) expanded covered conditions to include those resulting from coerced sexual conduct. This amendment addresses the outcome in *Connors v. Sterling Milk Co.*, 98 Ohio App.3d 711, 649 N.E.2d 856 (3rd Dist.1993) in which the claimant was denied compensation for PTSD and depression resulting from an assault by a masked assailant who forced the claimant at gunpoint to leave her place of work, enter an alley, and then told her to perform a sex act or die, because the claimant did not sustain a physical injury during the incident. At the time *Connors* was decided, a similarly situated employee subjected to sexual misconduct and sexual battery in the workplace was relegated to civil tort actions as a remedy. *See e.g. Kearns v. Porter Paint Co.*, 61 Ohio St.3d 486, 575 N.E.2d 428 (1991), *inter alia*.

**{¶17}** In contrast to the 2006 amendments requiring that the injury and psychiatric condition both be suffered by the same claimant and allowing coverage of psychiatric conditions resulting from sexual assault suffered in the workplace, the legislature has declined to modify the statute to specifically include or exclude the Ohio Supreme Court's 1984 expansive interpretation of R.C. 4123.01 "injury" to

include conditions that develop gradually over time as a result of the performance of an injured worker's job-related duties. *Village v. General Motors Corp., G.M.A.D.*, 15 Ohio St.3d 129, 472 N.E.2d 1079 (1984) (prior to the *Village* decision the Court read the definition narrowly to cover only spontaneous, accidental, injuries; occupational diseases are defined separately under the statutory scheme.).

**{¶18}** The history of revision, expansion, and inaction surrounding R.C. 4123.01 over the last thirty years reflects an evolving area of law and highlights the need to adhere to "clear legislative intent" as expressed in the language of the statute itself. *Rambaldo v. Accurate Die Casting*, 65 Ohio St.3d 281, 285, 603 N.E.2d 975 (1992) (citing the Minnesota Supreme Court in *Lockwood v. Independent School Dist. No. 877* (Minn.1981), 312 N.W.2d 924, 927). When considering the meaning and application of R.C. 4123.01 we must consider the context of the amendments, "because 'a legislative body in enacting amendments is presumed to have in mind prior judicial constructions of the section.' " *Rambaldo* at 286, citing *State ex rel. Huron Cty. Bd. of Edn. v. Howard*, 167 Ohio St. 93, 96, 146 N.E.2d 604 (1957). "We also presume that the General Assembly had in mind prior administrative constructions of the statutory sections." *Id.*

**{¶19}** Two Ohio Supreme Court cases on this subject are instructive: *State ex rel. Clark v. Industrial Commission*, 92 Ohio St.3d 455, 751 N.E.2d 967 (2001); and *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1. In *Clark*, the earlier of the two cases, the Supreme Court decided whether hostage leave pay, which was paid pursuant to the terms of a collective bargaining

agreement, must be setoff against temporary total disability benefits awarded for the injuries and PTSD resulting from a hostage-taking incident. The claimant in *Clark* was a corrections officer working in the Southern Ohio Correctional Facility and was taken hostage during an inmate riot.

{¶20} Clark was held by the inmates from April 11, 1993 until April 15, 1993, and suffered multiple physical injuries including abrasions on his wrists, a laceration on his forearm, an abrasion on his face, dehydration, and malnutrition. According to the Supreme Court, "Clark suffered severe stress and anxiety as a direct result of being held hostage as well as having been beaten." *Clark*, p. 456. Thirteen days after his release, Clark filed a claim with the Ohio Bureau of Workers' Compensation for his injuries. Initially the bureau allowed a claim for "dehydration; malnourishment; abrasions bilateral wrists and face; laceration right upper arm; [and] atrial fibrillation." *Id.* The bureau later allowed compensation for his claim of "post-traumatic stress disorder" and his temporary total disability payments began on July 11, 1993. *Id.*

{¶21} After his release by the inmates but apparently prior to filing his workers' compensation claim, Clark also applied for and was granted hostage leave pay by the Ohio Department of Rehabilitation and Corrections pursuant to the collective bargaining agreement between the department and the Ohio Civil Services Employees Association. According to the Court, Clark received hostage leave payable at his regular rate beginning on April 18, 1993 and continuing until July 10, 1993. Subsequently, Clark filed a workers' compensation claim for temporary total disability benefits covering the period from April 12, 1993 through July 10, 1993,

which overlapped the dates on which he received hostage leave pay. The application for overlapping payment was denied by the bureau. The bureau decided that any hostage leave paid during that period was required to be deducted from the compensation award to avoid an overlap of benefits. Various levels of administrative appeal affirmed the denial but a subsequent mandamus action in the court of appeals resulted in an order granting compensation with no setoff for hostage pay.

{¶22} The Ohio Supreme Court reviewed the appellate court decision and examined the purposes of both workers' compensation and the setoff provision contained in R.C. 4123.56(A), which allows any "nonoccupational" benefit primarily paid for by the employer to reduce the amount of compensation paid over the same period. The Court concluded that the hostage leave payments were not a nonoccupational benefit, and therefore, setoff was not required. The Court explained that the hostage pay was intended to address a risk that corrections officers face every day as a result of a job that requires "daily intimate contact with convicted criminals, some of whom have violent propensities," explaining that the "emotional and physical pressures of extended incarceration can erupt into violence, rioting, and prison takeovers, as in this case, which often involve hostage-taking of prison employees." *Id.* at 458. "Thus, this benefit is designed to address a risk that is occupational, *i.e.*, one that is clearly connected to the nature of the work." *Id.* at 458-459.

{¶23} The Court emphasized that "[i]n order to qualify for hostage leave, Clark was not required to have suffered any physical injury; he was required to show only

that he suffered from stress associated with being held hostage." *Id.* at 459. This, according to the Court, meant that the contractual benefit would protect employees who, "without a corresponding physical injury," would not receive compensation under the workers' compensation system. *Id.* (paraphrasing *Bunger v. Lawson Co.*, 82 Ohio St.3d 463, 464, 696 N.E.2d 1029, 1031 (1998) "A psychological injury without a corresponding physical injury is not compensable under the workers' compensation system."). The Court compared the hostage pay benefit to the civil action remedy for claims concerning sexual assault that were not then covered under the compensation statute, and were therefore not precluded by the section of the statute limiting recovery to the benefits allowed by statute, identified in *Kearns v. Porter Paint Co.*, 61 Ohio St.3d, 575 N.E.2d 428 (1991). While *Clark* primarily dealt with the idea of benefit setoffs, not at issue in the matter before us, a few principles important to our understanding of our issue underlie the *Clark* court's decision: (1) workers' compensation is designed to compensate employees for harms that occur due to employment that would otherwise prevent the employee from earning wages; (2) workers' compensation excludes psychiatric injuries that have no "contemporaneous" or "corresponding" compensable physical injury, but would allow compensation for psychiatric conditions that do correspond to a physical injury.

{¶24} Officer Clark suffered a variety of physical injuries, both when he was taken hostage (lacerations, abrasions) and due to being held (dehydration, malnutrition, wrist abrasions). The Court's description of Clark's covered injuries reflects multiple stressors that contributed to the covered psychiatric condition: "[i]n

addition to his physical injuries, Clark suffered severe stress and anxiety as a direct result of being held hostage as well as having been beaten." *Clark* at 456. Officer Clark's ability to recover for PTSD when he had suffered a corresponding physical injury was a not ever at issue. There is no discussion of the nature of the injuries or the specific connection between the injuries and the psychiatric condition and there was no separate appeal of those issues in *Clark*. The fact that Clark's PTSD was suffered as a result of both physical and non-physical trauma did not alter his eligibility for workers' compensation.

**{¶25}** The Court subsequently cited *Clark* in support of the proposition that covered "[c]onditions suffered by the claimant could be mental disorders, provided that they arose from a physical injury." *McCrone, supra,* ¶16. In *McCrone*, the Ohio Supreme Court determined that the exclusion of benefits for psychiatric conditions that do not arise from a compensable physical injury or occupational disease does not rise to the level of a violation of the equal protection clauses of the Ohio and United States Constitutions. In *McCrone*, the claimant filed for PTSD but had suffered no physical injury during two armed robberies at the bank where she worked. The claimant was diagnosed with PTSD as a result of having witnessing the first robbery and then being the teller robbed during the second. The claimant argued that a workers' compensation scheme that denies compensation for psychiatric harm except where such harm is accompanied or evidenced by a physical injury violates the equal protection clauses of the United States and the Ohio Constitutions. The Fifth District Court of Appeals found the statute unconstitutional,

and certified a conflict on appeal from its ruling. The Ohio Supreme Court's review of the issue was limited to the issue of equal protection because due process and article two violations were not raised in the proposition of law or certified conflict. The certified question before the Court asked "[w]hether R.C. 4123.01(C)(1) violates the Equal Protection Clauses of the United States and Ohio Constitutions, where it excludes from Workers' Compensation coverage psychological or psychiatric conditions occurring in the course of and arising out of the claimant's employment, but [which] do not arise from or occur contemporaneously with a compensable physical injury." *Id.* at ¶5.

**{¶26}** The Court began its evaluation of the question by discussing the history of the definition and the treatment of covered injuries by the courts and by the Ohio Bureau of Workers' Compensation. The Court noted that "courts have held that compensable injuries under the workers' compensation system require a physical component suffered by the claimant" both before and after amendments to the definition of injury that explicitly excluded psychiatric conditions in the absence of physical harm. *Id.* ¶16. Similarly, the Ohio Bureau of Workers' Compensation itself "has required a physical injury to the claimant before granting compensation for a psychiatric condition both before and after the 1986 amendments." *Id.* at ¶17. The Court concluded: "Because the General Assembly has classified mental conditions as compensable under workers' compensation laws only when they are accompanied by physical injury," "psychological or psychiatric conditions that do not arise from a compensable physical injury or occupational disease are excluded from the definition

of 'injury' under R.C. 4123.01(C)(1)." *Id.* ¶18-19. The Court decided that psychological or psychiatric conditions, in the absence of a physical injury, could be excluded from coverage without violating the equal protection clause. *Id.* ¶38. In the Court's formulation, the phrases "accompanied by" and "arise from" are interchangeable.

**{¶27}** None of the various appellate court cases cited by Appellant in an attempt to support the enhanced standard Appellant would have us adopt involve the denial of coverage to a claimant suffering both a covered physical injury and a psychiatric condition resulting from the same work-place incident. The cases cited by Appellant generally involve a denial of coverage to a claimant suffering from a work-related psychiatric condition who has not suffered a concurrent physical injury. (*E.g. Bunger, supra* (no physical injury); *Rambaldo, supra* (no physical injury, denied claim by an employee who charged that he suffered from major depression and mixed personality disorder because his employer required him to do things which were dishonest or somewhat unethical); *Banks v. LTV Steel Co.*, 100 Ohio App.3d 585 (1995) (recovery is allowed to claimant who was diagnosed with PTSD in addition to the chest, spinal, arm and leg injuries she suffered in an industrial accident); *Karavolos v. Brown Derby, Inc.* 99 Ohio App.3d 548 (1994) (remanded for trial to determine whether there exists a connection between employee's back injury and various mental conditions including drug addiction); *Wood v. Ohio State Hwy. Patrol*, 156 Ohio App.3d 725, 2004-Ohio-1765 (5th Dist.) (no physical injury); *Ireland v. S. Ohio Corr. Facility*, 2006-Ohio-3519 (5th Dist.) (no physical injury). Appellant also

brings to our attention *Dunn v. Mayfield*, 66 Ohio App. 3d 336, 584 N.E.2d 37 (4th Dist.1990). In *Dunn*, the employee filed a workers' compensation claim requesting relief for acute anxiety and PTSD. The claim was left open for claimant to provide additional evidence of a physical injury. Claimant failed to meet the deadline to supplement and appealed the resulting denial of compensation. The appellate court reversed summary judgment against the claimant and, using proximate cause language, remanded the matter to the trial court for further proceedings, placing the burden on the claimant to show a connection between any physical injuries and the diagnosis of PTSD. *Dunn* actually appears to support the current matter in that Appellee could receive benefits for her PTSD so long as it can be said to be proximately caused by the physical injury. Nothing in *Dunn* requires physical injury to be the single or only cause of the psychiatric disorder. This Court has not considered the specific issue now before us, but we have previously denied coverage for PTSD in the absence of any physical injury. *Fields v. City of Youngstown*, 7th Dist. No. 88 CA 89, 1989 WL 59014 *2 (May 30, 1989) (claimant specifically stated "I did not have or get any physical injury").

{¶28} Although no Ohio court has ruled on the precise issue raised by Appellant, the Second District Court of Appeals has affirmed a trial court decision that denied recovery for PTSD where the claimant also sustained physical injuries as a result of employment. However, the court did not apply the "sole cause" formulation advocated by Appellant. *Armstrong v. Jurgenson Co.*, 2nd Dist. No. 2011-CA-6, 2011-Ohio-6708. The 2011 decision affirmed the trial court's finding that the physical

injuries suffered by a teamster, who was the victim of a rear-end crash while working, were not the cause of his PTSD. At trial, there was conflicting testimony on the central issue of causation. The claimant's examining physician originally diagnosed the teamster with PTSD and referred to his physical injuries in the report relied on by the Industrial Commission to grant this PTSD benefits. The treating physician also testified at trial that the physical injuries contributed to and were causal factors in the claimant's PTSD. *Id.* at ¶15.

**{¶29}** At trial, the parties stipulated that the accident was work-related; that claimant suffered a variety of physical injuries due to the accident; and that claimant was suffering from PTSD due to the accident. However, the employer presented a contradicting expert witness who concluded that although the claimant was suffering from PTSD, the cause of the disorder was the act of witnessing the collision and resulting harm to the other driver (who died), and was not related in any way to the claimant's own back and shoulder injuries.

**{¶30}** The reviewing court's majority opinion agreed with the trial court's reading of the statute's limitation on coverage to those psychiatric conditions that "have arisen from an injury or occupational disease sustained by that claimant." The court held that in order to be compensable, psychiatric conditions must be "started by and therefore result[ing] from a physical injury or occupational disease the claimant suffered." *Id.* at ¶35. Both the trial court and the reviewing court relied on the testimony of the employer's expert who testified that there was no causal link between the physical injuries and PTSD, rather than the testimony of the treating

physician who identified the injuries as a contributing cause. This matter appears to rest entirely on a credibility determination; the trial court found the claimant's physicians were not credible and the employer's expert was credible. Hence, this credibility determination would be upheld on review.

**{¶31}** The matter before us does not involve conflicting testimony. It does involve a claim for both physical injury and psychiatric condition resulting from a single hostage-taking incident. The two depositions of Appellee's treating physician provide consistent testimony that the physical injury to Appellee is a proximate cause of her PTSD, although concededly not the sole proximate cause. She also suffers from the stress of being taken hostage. Both factors contributed to and resulted in her PTSD. In this instance, Appellee is most similarly situated to the claimant in *Clark*, who was similarly held hostage and was physically injured by his assailant. Without evidence ruling out her physical injury as one cause of PTSD, it appears that, were we to reverse the bureau's decision granting compensation and the trial court's decision allowing recovery, we must interpret the statute more narrowly than does the Ohio Supreme Court. This would result in the imposition of an evidentiary standard on claimants suffering from multiple work-related harms that ignores the principles of causation applicable to workers' compensation. This is not reflective of controlling precedent. Accordingly, applying the principles of causation prescribed by the Ohio Supreme Court in *Murphy* and its progeny, the judgment of the trial court is affirmed.

<u>Conclusion</u>

{¶32} Appellee's uncontradicted evidence of both a compensable physical and concurrent psychiatric condition was sufficient to support the trial court's conclusion that there was no genuine issue of material fact to be litigated. Appellee was entitled to judgment as a matter of law.  Appellant's sole assignment of error is without merit and is overruled.  The judgment of the trial court is affirmed in full.

Donofrio, J., concurs.

Vukovich, J., concurs.